James TURNER, Petitioner-Appellant,

v.

UNITED STATES PAROLE COMMIS-
SION, Respondent-Appellee.

No. 84–2240.

United States Court of Appeals,
Seventh Circuit.

Argued April 4, 1986.

Decided Jan. 13, 1987.

As Amended Jan. 20, 1987.

Diane E. Ratekin, Jenner & Block, Chica-
go, Il., for petitioner-appellant.

Robert T. Gruenberg, Asst. U.S. Atty.,
Anton R. Valukas, U.S. Atty., Chicago, Ill.,
for respondent-appellee.

Before WOOD and COFFEY, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

This case presents a federal prisoner's challenge to the refusal of the Bureau of Prisons ("Bureau") to move his sentencing court to reduce his minimum sentence to time served. Because the Parole and Reorganization Act, Pub.L. No. 94–233, § 2, 90 Stat. 219 (codified as amended at 18 U.S. C.A. §§ 4201–4218 (West 1985) ("Parole Act")), reveals an intent to preclude judicial review of the Bureau's decision, we will affirm the district court's dismissal of the action.

## I

James Turner, the petitioner below and the appellant here, was convicted of unarmed bank robbery and sentenced to a minimum ten-year term, which he began serving on March 15, 1982. While incarcerated, he voluntarily (and apparently without receiving any promises in return) testified for the government in another criminal trial that resulted in the conviction of a third party.

After testifying for the government, Turner requested the Bureau under 28 C.F.R. § 572.40(a) (1986) to move his sentencing court to reduce his minimum sentence to time served under 18 U.S.C. § 4205(g) (1982) in order to make him eligible for parole.[1] Turner claimed as justifications his testimony for the government in the later criminal trial and his medical con-dition—the pleadings allege that he suffers from some presently nonlife-threatening symptoms of scleroderma. He also alleged that his life had been threatened in prison on account of his testimony, and that he warned prison officials of a threat of violence to a prison guard.

The General Counsel of the Bureau refused the request on behalf of the Bureau and provided Turner written notice and the reasons for the refusal. Turner then filed a claim in district court alleging jurisdiction under 28 U.S.C. § 2241 (1982) and claiming that the Bureau had abused its discretion in refusing Turner's request.[2] The trial court dismissed the suit, ruling that section 701(a) of the Administrative Procedure Act ("APA") deprived the federal courts of subject matter jurisdiction.[3] 5 U.S.C. § 701(a) (1982). Turner appeals that decision.

## II

■ The dispositive issue in this case is whether the Bureau's refusal to make the motion to reduce Turner's sentence is reviewable by the courts. Section 702 of the APA generally allows a person who "suffers legal wrong" or who is "adversely affected or aggrieved" by a federal agency's action to obtain judicial review of that action. 5 U.S.C. § 702 (1982). We also must apply the generally applicable presumption in favor of judicial review, which requires "clear and convincing evidence" of preclusion to deprive the federal courts of jurisdiction. *See, e.g., Block v. Community Nutrition Institute*, 467 U.S. 340, 104 S.Ct. 2450, 2456–57, 81 L.Ed.2d 270 (1984);

1. Section 4205(g) provides: "At any time upon motion of the Bureau of Prisons, the court may reduce any minimum term to the time the defendant has served. The court shall have jurisdiction to act upon the application at any time." 18 U.S.C. § 4205(g) (1982).

2. Turner moved this court to change the respondent in this action from O.C. Jenkins and the Bureau of Prisons to the United States Parole Commission. We granted the motion on November 1, 1985.

3. While the Seventh Circuit has never explicitly held that section 701 of the APA operates to preclude subject matter jurisdiction, we need not address that issue to affirm the district court's dismissal of this action. Section 701 either precludes jurisdiction or denies the existence of the cause of action. In the former case the court has no power to entertain the complaint; in the latter, the complaint fails to state a claim upon which relief can be granted. In either event, the action must be dismissed. Furthermore, the parties did not raise this issue in their briefs to this court. Thus, our general duty to avoid deciding unnecessary issues is in this case buttressed by our reluctance to address issues that have not been considered by the parties in their briefs and oral arguments.

*Abbott Laboratories v. Gardner,* 387 U.S. 136, 140–41, 87 S.Ct. 1507, 1510–11, 18 L.Ed.2d 681 (1967); *Cardoza v. Commodity Futures Trading Commission,* 768 F.2d 1542, 1551 (7th Cir.1985). *But see Heckler v. Chaney,* 470 U.S. 821, 105 S.Ct. 1649, 1655–56, 84 L.Ed.2d 714 (1985) (presumption of nonreviewability applies to agencies' decisions not to take enforcement action).[4] The APA denies judicial review in two specific situations. 5 U.S.C. § 701 (1982). Section 701(a)(1) denies review if Congress expresses its intent in a statute (here the Parole Act) to preclude judicial review. *See Block v. Community Nutrition Institute,* 467 U.S. 340, 104 S.Ct. 2450, 81 L.Ed.2d 270 (1984). If the search for statutory intent regarding judicial review is unavailing, judicial review will still be presumed unless the statutory scheme provides no meaningful guideline by which to define the limits of the agency's discretion, leaving the Bureau's decision "committed to agency discretion by law" under section 701(a)(2). *See Heckler v. Chaney,* 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985) (presumption for reviewability applies unless agency action challenged is a decision not to enforce).

At first blush, the latter approach under section 701(a)(2) might appear appropriate here. There is no explicit language in the Parole Act itself or in the legislative history regarding judicial review of the Bureau's power to move a court to reduce a sentence. Moreover, language in the Parole Act explicitly subjects certain Parole Commission actions (rulemaking) to review

under the APA, 18 U.S.C. § 4218(c); *see id.* § 4203(a)(1), and other language explicitly excepts other Parole Commission actions (parole decisions) from the APA, *id.* § 4218(d); *see id.* §§ 4203(b)(1)–4203(b)(3). Standing alone, these differing explicit provisions would appear to preclude any fair inference one way or the other regarding the remaining Parole Act provisions, the judicial review of which Congress did not explicitly address. In addition, both parties have on appeal argued the applicability of *Chaney,* the leading case applying section 701(a)(2).

Nevertheless, the parties' appeal to *Chaney* is misguided. *Chaney* itself firmly establishes that § 701(a)(2) is only applicable if no statutory intent can be discerned under § 701(a)(1). *Chaney,* 105 S.Ct. at 1655. We do not reach the test under § 701(a)(2) because our application of the test for statutory intent outlined in *Community Nutrition* requires us to hold that Congress intended the Parole Act to preclude judicial review of the Bureau's decisions whether to move in federal court for sentence reductions under 18 U.S.C. § 4205(g) (1982).[5] The search for Congress's intent goes beyond simply cataloguing the explicit references to the APA and to judicial review in the statute and its legislative history; *Community Nutrition* requires us to look to "inferences of intent drawn from the statutory scheme as a whole," *Community Nutrition,* 104 S.Ct. at 2456, and to the "nature of the administrative scheme involved," *id.* at 2454; *see also Morris v. Gressette,* 432 U.S. 491, 501,

**4.** Because we believe the Parole Act provides evidence of legislative intent sufficient even to overcome a presumption favoring judicial review, we do not decide the question of whether the Bureau's action should receive a presumption of nonreviewability rather than the presumption for reviewability. *See, e.g., California Human Development Corp. v. Brock,* 762 F.2d 1044, 1052–53 (D.C.Cir.1985) (Scalia, J., concurring) (arguing that *Chaney* should be read to require courts to determine if agency actions are traditionally nonreviewable and if so, to apply a presumption of nonreviewability). *But see Cardoza v. Commodity Futures Trading Commission,* 768 F.2d 1542, 1548–50 (7th Cir.1985) (reading *Chaney* more narrowly). We do observe, however, that in at least one light a Bu-

reau decision not to request a sentence reduction appears as the paradigm of a decision not to enforce—it is a request to nullify a portion of an adjudicated sentence of enforcement.

**5.** Even were we to apply *Chaney* and even were we to do so under the presumption for reviewability, the Parole Act contains "no meaningful standards for defining the limits of [the Bureau's] discretion," *Chaney,* 105 S.Ct. at 1657, regarding section 4205(g) motions, and thus the Bureau's decisions on whether to bring those motions would be committed to its discretion by law under section 701(a)(2) of the APA. *Id.* at 1657–58.

97 S.Ct. 2411, 2418, 53 L.Ed.2d 506 (1977); *Barlow v. Collins,* 397 U.S. 159, 165–66, 90 S.Ct. 832, 837, 25 L.Ed.2d 192 (1970).

■ First, we note that all the explicit provisions within the Parole Act regarding judicial review under the APA are addressed to the powers of the Parole Commission and not to those of the Bureau. Congress explicitly chose to provide exclusive internal review by the Parole Commission of its parole decisions.[6] 18 U.S.C. § 4218(d) (1982). Congress also explicitly chose to make the rulemaking efforts of the Parole Commission subject to judicial review. 18 U.S.C. § 4218(c) (1982). This suggests that Congress perceived the Parole Commission's decisions regarding parole itself to require review of one specified character and the Parole Commission's decisions in rulemaking to require review of another character.

Section 4205(g) is wholly unlike those provisions; it contains a grant to an entirely different agency (the Bureau) of an entirely different power (motions for sentence reduction). The power is not the direct control of decisions to grant the conditional liberty of parole or to change a sentence; it is merely the power to bring an inmate's sentence before a federal court for review. And the power is not delegated to the Parole Commission, the agency normally delegated the authority to decide questions of length of incarceration. Nor is the power delegated to the courts, who make the initial sentencing decisions; it is to the Bureau, the agency responsible for maintaining and overseeing the prisons.[7] *See* 18 U.S.C. § 4042 (1982). This placement of the power to make § 4205(g) motions with the Bureau suggests that Congress perceived the control of the power to require less oversight and less administrative time than parole and sentencing decisions, for the Bureau is not staffed with adjudicators.

The absence of mandatory language in this provision also immediately suggests the breadth of discretion characteristic of nonreviewable authority. If Congress meant to bind the Bureau's discretion, surely it would have done so more directly than by means of a single line only implicitly granting even the power itself. The Parole Act devotes only a single clause in section 4205(g) to the Bureau's power; it reads *"[a]t any time upon motion of the Bureau of Prisons,* the court may reduce any minimum term to the time the defendant has served."* 18 U.S.C. § 4205 (1982) (emphasis added). This clause is entirely bereft of any standards a court could apply in reviewing the Bureau's decision. Considering this lack of standards, the wholly different character of the Bureau's general duties and its specific delegated powers from those of the Parole Commission, and the permissive character of § 4205 decisions, we conclude that Congress intended to preclude judicial review.

Moreover, the failure to bar judicial review explicitly is hardly surprising. The Parole Act reorganized the Parole Board into the Parole Commission; it was only most indirectly concerned with the powers of the Bureau. A cursory examination of the powers Congress has delegated to the Bureau reveals that Congress saw the Bureau's role to be advisory in matters regarding the length of incarceration. *See, e.g.,* 18 U.S.C. §§ 4205(d), 4207(1) (West 1985) (requiring and authorizing Bureau to provide recommendations and reports to the Parole Commission regarding parole decisions). The Bureau's power under section 4205(g) is no exception; the sentencing judge actually makes the decision regarding sentence reduction—the Bureau only

---

6. Parole decisions are reviewed by the courts under habeas corpus, but only for constitutional challenges or abuse of discretion. *See, e.g., Solomon v. Elsea,* 676 F.2d 282 (7th Cir.1982); *Balanyi v. Local 1031, Int'l Brotherhood of Elec. Workers,* 374 F.2d 723 (7th Cir.1967).

7. Because the appellant has changed the respondent named in this action from the Bureau to the Parole Commission, some question exists regarding whether the appropriate agency is before the court. Similarly, the release of Turner on parole has prompted a suggestion that the litigation is now moot. Because we decide on other grounds that the action must be dismissed, we do not decide these issues.

brings the matter to the court's attention. Given Congress's perception of the Bureau's role, it would have been unusual indeed for Congress to have intended judicial review. Given Congress's central purpose in the Parole Act to reorganize the Parole Board into the Parole Commission, it would also have been odd for Congress to have explicitly addressed the peripheral (though important) issue of the nonreviewability of the Bureau's decisions under section 4205(g).

The place of the Bureau's power in the broad scheme of control of the time of an inmate's incarceration provides further evidence of Congress's intent to preclude judicial review of the Bureau's decisions under section 4205. There already exist two complex and interlocking systems that exert control over the time a convicted federal offender is actually incarcerated: sentencing, under the control of the federal courts, Fed.R.Crim.P. 32, and parole, under the control of the Parole Commission, 18 U.S. C.A. §§ 4201–4218 (West 1985). While the Bureau necessarily has an advisory role in parole decisions because of its firsthand knowledge of the inmates' records during incarceration, *see* 18 U.S.C.A. §§ 4205(c), 4207(1) (West 1985), the actual decisions are the responsibility of the Parole Commission, *id.* § 4206. Appeals by the in-

mates are made within the Parole Commission, *id.* § 4215, or to the courts through habeas corpus, 28 U.S.C. § 2241; *see, e.g., Solomon v. Elsea,* 676 F.2d 282 (7th Cir. 1982). Thus decisions on the duration of incarceration are already complex, and are made either by the courts or the Parole Commission. After having devoted such great attention to sentencing and parole by these tribunals, it would be little short of incredible for Congress casually to insert into the law by the means of a single clause yet another path for review of decisions related to time of incarceration. The nature of the statutory scheme makes it clear that the Bureau's power under section 4205(g) simply allows another chance for input to the courts, with the intention that only the decisions then made by the courts would be subject to review.

■ Matters might be different were constant review of one's sentence a matter of statutory or constitutional right, but it is not either.[8] Section 4205(g) does not establish an expectation of parole or even a right to a motion for parole; nor does a constitutional right attach to the mere possibility of conditional liberty.[9] *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex,* 442 U.S. 1, 11, 99 S.Ct. 2100, 2105, 60 L.Ed.2d 668 (1979). All section 4205(g) provides is the possibility of a

**8.** Because we hold that no constitutional right is implicated, we do not reach the issue of whether judicial review would be precluded in such a case. *See, e.g., Heckler v. Chaney,* 105 S.Ct. 1649, 1659–60 (Brennan, J., concurring); *Solomon v. Elsea,* 676 F.2d 282, 284 (7th Cir.1982) (reviewing constitutional challenge to Parole Commission's parole decision under 18 U.S.C. § 4206 (1982)); *cf. Balanyi v. Local 1031, Int'l Brotherhood of Elec. Workers,* 374 F.2d 723, 726 (7th Cir.1967) (substantial showing of constitutional violation on face of complaint necessary to state reviewable claim where National Labor Relations Act precluded review). Similarly, because we hold that the Bureau's decision not to move the court to reduce Turner's sentence was well within its statutory powers, we do not reach the issue of the courts' power in exceptional circumstances to exercise federal jurisdiction where an agency exceeds its statutorily delegated powers. *See Chaney,* 105 S.Ct. at 1659–60 (Brennan, J., concurring); *see also, e.g., Leedom v. Kyne,* 358 U.S. 184, 188, 79 S.Ct. 180, 184, 3 L.Ed.2d 210 (1958); *Electricities of North*

*Carolina, Inc. v. Southeastern Power Administration,* 774 F.2d 1262, 1267 (4th Cir.1985); *Council of Prison Locals v. Brewer,* 735 F.2d 1497, 1500–01 (D.C.Cir.1984).

**9.** *Greenholtz* held that the simple possibility of parole, without more by the way of statutory entitlement, provides only a mere hope of conditional liberty, "a hope which is not protected by due process." *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex,* 442 U.S. 1, 11, 99 S.Ct. 2100, 2105, 60 L.Ed.2d 668 (1979). Turner argues that we should provide due process protection for the denial of a section 4205(g) motion, even though section 4205(g) establishes a possibility of conditional liberty significantly more remote than the mere possibility of parole discussed in *Greenholtz.* Such an argument cannot prevail. "It is axiomatic that before due process protections can apply, there must first exist a protectible liberty or property interest." *Solomon v. Elsea,* 676 F.2d 282, 284 (7th Cir.1982).

motion to a court for a reduction in sentence. The possibility of even conditional liberty is extremely remote. First, the Bureau must choose in its discretion to make the motion. Even if the motion is made, the court in its discretion may well refuse to reduce the sentence. *See, e.g., Maddox v. Carlson,* 587 F.Supp. 399, 401 (N.D.Ill. 1984). And even if the court does reduce the minimum sentence to time served, the Parole Commission in its discretion may well not grant parole. *See* 18 U.S.C. § 4218(d) (1982). Thus neither the Constitution nor Congress has made a motion for sentence reduction a matter of entitlement. We do not possess the power to do so.

Turner argues that even if the statute itself does not bind the Bureau to particular standards and judicial review, the rules adopted by the Bureau under the statute do so. Our review of these regulations convinces us otherwise. Not only do the regulations fail to restrict the Bureau's discretion, they underscore its breadth.

The substantive regulations note that the Bureau uses its power under section 4205(g) in limited situations to reduce prison overcrowding, 28 C.F.R. § 572.40(b) (1986), or "in particularly meritorious or unusual circumstances which could not have been reasonably foreseen by the court at the time of sentencing ...," *id.* at 572.-40(a) (1986). Section 572.40(a) continues by providing an example: "This section *may* be used, for example, if there is an extraordinary change in an inmate's personal or family situation or if an inmate becomes severely ill." *Id.* (emphasis added). Thus there is no language committing the Bureau to make a section 4205(g) motion in any particular circumstances—and no guidelines a court could apply rationally as a basis for review. The regulation only very loosely identifies the classes of cases

that the Bureau may review for possible motions. Moreover, the Bureau specifically reserves its discretion by making its example merely permissive, thus not committing itself to make a motion even if the situation outlined in the example were actually to occur. Similarly, the adverb "particularly" specifically reserves the Bureau's discretion to refuse to make a motion even in situations that are meritorious or unusual.

The procedural regulations adopted by the Bureau in 28 C.F.R. §§ 572.41, 572.43, 572.44 (1986) to allow and to process requests for section 4205(g) motions also reveal the Bureau's retention of the entire discretion granted to it under the statute. They establish a gauntlet of officials who must first approve an inmate's request for a section 4205(g) motion before the request is approved. 28 C.F.R. § 572.43. If any of these officials disapproves, the official simply sends a denial to the inmate and does not forward the request to the next level. Before the Director of the Bureau makes the final decision to approve a request, the request must first gain approval from the Warden, the Regional Director, and the General Counsel. In addition, either the Medical Director or the Assistant Director, CPD, must provide a written opinion to accompany any request forwarded to the Director. The obviously different responsibilities of each of these officials suggests that each brings a different set of professional concerns to the consideration of each request, rather than simply reviewing the decision made by the preceding official. No guidelines establish what each official must consider. This lengthy approval process helps ensure careful consideration of each successful request but allows efficient handling and early termination of meritless requests.[10] This structure further reveals

---

**10.** We note that the Bureau has adopted procedures for some internal review of its refusals to make section 4205(g) motions. 28 C.F.R. § 572.44 (1986). In his brief to this court, Turner has confused the applicant's right to this internal review with the issue of judicial review. Turner cites *Maddox v. Carlson,* 587 F.Supp. 399 (N.D.Ill.1984) to support his argument that the

Bureau's refusals under 28 C.F.R. § 572.43 (1986) are reviewable in the federal courts, but *Maddox* merely noted the availability in certain instances of this internal, administrative review. On the pleadings before this court, Turner appears to have received the internal review outlined in the regulations, and Turner has not

**618**

that the Bureau is not creating a right to such motions and is interested in their efficient handling to free the officials involved to carry on their primary responsibilities. These officials owe their major allegiance to the effective, careful, and safe operation of the nation's federal prisons. *See* 18 U.S.C. § 4042 (1982). The grant of power to make such motions to these nonadjudicatory officials suggests that Congress did not intend to thereby create yet another complex sentencing review system.

■ Thus our review of the Bureau's regulations reveals no restrictions on its discretion under section 4205(g). While we do not generally defer to an agency's interpretation of its own authorizing statute (and we do not do so here), the construction an agency gives to that statute is further evidence of the statutory intent. *Southeastern Community College v. Davis*, 442 U.S. 397, 411–12, 99 S.Ct. 2361, 2369–70, 60 L.Ed.2d 980 (1979); *Hi-Craft Clothing v. NLRB*, 660 F.2d 910, 916 (3rd Cir.1981). Here that evidence unequivocally echoes our own reading of the statute as providing the Bureau unreviewable discretion.

### III

We hold that the Parole and Reorganization Act precludes the federal courts from reviewing the Bureau of Prisons' decisions whether to move a sentencing court for the reduction of a minimum term to time served under 18 U.S.C. § 4205(g) (1982). The judgment of the district court dismissing this action is

AFFIRMED.

challenged the internal review procedures applied in his case.