**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Scott FRANZ, Defendant–Appellant.**

**No. 88–2739.**

United States Court of Appeals, Seventh Circuit.

Argued May 16, 1989.

Decided Oct. 4, 1989.

Caryn Jacobs and David J. Stetler, Asst. U.S. Attys., Crim. Receiving, Appellate Div., Chicago, Ill., for U.S.

James R. Epstein, Francine Kaplan, Epstein, Zaideman & Esrig, Chicago, Ill., for Scott Franz.

Before COFFEY, RIPPLE, and MANION, Circuit Judges.

RIPPLE, Circuit Judge.

Scott Franz engaged in a checkkiting scheme and pleaded guilty to a charge of bank fraud under 18 U.S.C. § 1344. At his sentencing hearing, Mr. Franz requested that, due to the presence of mitigating circumstances in his case, the district court depart from the sentencing range mandated by the Sentencing Guidelines promulgated by the United States Sentencing Commission under 28 U.S.C. § 994. The district court denied his request for a departure and imposed on Mr. Franz the lowest sentence provided for his offense under the guidelines: eight months' imprisonment (four months of which are to be served in a work-release program), followed by a two-year period of supervised release. Mr. Franz was also ordered to make restitution to the victim of his fraud in the amount of $62,382. Mr. Franz filed a notice of appeal from the district court's denial of his request for a departure. The government maintains that, pursuant to 18 U.S.C. § 3742(a), we lack jurisdiction to consider a defendant's appeal of a legal sentence that is *within* the applicable sentencing guideline range. For the reasons set forth in this opinion, we conclude that section 3742(a) does not provide for appellate review of Mr. Franz' sentence. Therefore, we dismiss his appeal for want of jurisdiction.

## I.

### Background

A. *Facts*

Scott Franz was employed as an account executive at Merrill Lynch, Pierce, Fenner & Smith, Inc. (Merrill Lynch) in Northbrook, Illinois from May 1987 through April 1, 1988. Mr. Franz maintained a Cash Management Account at Merrill Lynch that allowed him to write checks on the account and to trade stocks and stock options. He also maintained a checking account at the First Illinois Bank of Arlington Heights (First Illinois). At the time of his conviction, he had worked in the securities field for ten years and had never before been charged with any violation of the criminal law.

In December 1987, Mr. Franz underwent back surgery in an attempt to correct a chronic back injury. This procedure was his fourth back operation and the third time that he had undergone back surgery in three years. After his operation, he was placed in a body cast and ordered to remain at home for at least six weeks. He was also ordered to remain in the body cast for four months. In addition, Mr. Franz was required to take prescription drugs to help him tolerate the severe pain that he was experiencing. Mr. Franz maintains that these drugs adversely affected his mood and his ability to think and work.

During the first week of his recuperation, Mr. Franz was informed by Merrill Lynch that he would be receiving only the disability benefits of a one-year employee— one week of disability pay. This news apparently came as a surprise to Mr. Franz, who had previously worked for Merrill Lynch for several years, left the firm, and then returned in May 1987. Moreover, Mr. Franz maintains that he was required to fill the production quotas of a six-year employee. At the same time that Merrill Lynch informed Mr. Franz of his limited disability benefits, it demanded repayment of a loan that had previously been made to him.

Mr. Franz provides the sole financial support for his wife and two children, and the combined pressures of no work income, limited disability benefits, and Merrill Lynch's demand for repayment of the loan placed a strain on Mr. Franz' family finances. Therefore, in mid-January 1988, while still in a full body cast, Mr. Franz attempted to return to work. Mr. Franz explained that he only returned to work so that he could earn enough money to cover his family expenses and to allow him to return home and recuperate properly. *See* Appellant's Br. at 3. His post-operative pain and the restrictions imposed by his

body cast made it difficult for Mr. Franz to perform his duties. Therefore, he continued to take his pain medication while working and cut himself out of his body cast. Even after taking these steps, his physical condition prevented him from attending properly to his clients' accounts. He therefore began trading exclusively for his own account.

When some of his investments fell through, Mr. Franz began kiting checks in an attempt to cover his losses. Mr. Franz purchased stock options through his Merrill Lynch account. In order to pay for the options, he wrote checks on his First Illinois account. He did not, however, have sufficient funds in that account to cover the checks. Thus, he deposited checks written on his Merrill Lynch account, for which there were also insufficient funds, into his First Illinois account. In this way, Mr. Franz created the false impression that there was a positive balance in the First Illinois account.

In late February 1988, Merrill Lynch noticed a large balance in Mr. Franz' Cash Management Account and again demanded repayment of his outstanding loan. At that time, Mr. Franz confessed his check-kiting scheme to Merrill·Lynch, and, shortly thereafter, he voluntarily contacted the office of the United States Attorney. He then pleaded guilty to a one-count information charging him with bank fraud in violation of 18 U.S.C. § 1344.

### B. *Sentencing Hearing*

In his plea agreement, Mr. Franz agreed that, for the purpose of applying the sentencing guidelines, the adjusted offense level for his crime was level thirteen. He also acknowledged that he was entitled to a two-level reduction under Guideline section 3E1.1 for accepting responsibility for his conduct. *See Sentencing Guidelines Manual* § 3E1.1. *Acceptance of Responsibility.* The plea agreement also stated that Mr. Franz' criminal history category was a level I. *See* R.11. The guidelines prescribe a sentencing range of eight to fourteen months' imprisonment for a defendant with a level eleven offense and a level I criminal history. However, at his sentencing hear-

ing on August 26, 1988, Mr. Franz requested that the district court depart from the prescribed guideline levels. He argued that many mitigating factors present in his case either were not taken into account by the sentencing guidelines or were considered inadequately by the guidelines. Thus, in his view, departure was warranted.

Mr. Franz specifically argued that he had acted under duress and that his "overwhelming acceptance of responsibility for his actions" made the two-level reduction allowed by the guidelines inadequate. With respect to duress, Mr. Franz maintained that his severe physical disability, the mental and emotional impact of his medication and the severe pain that he was experiencing, and the financial pressures on his family combined to constitute a cognizable duress claim that required a downward departure. Mr. Franz also emphasized that he had engaged in the check-kiting scheme without any intent to inflict a monetary loss on First Illinois; rather, he intended only to make enough money to allow him to return home and rehabilitate properly.

Mr. Franz' second argument focused on the fact that he voluntarily confessed to both his employer and the federal authorities without having been contacted by them. The government also conceded that Mr. Franz had cooperated fully. Moreover, Mr. Franz entered into an agreement obligating him to repay the entire amount lost by First Illinois on or before August 1991. Under these circumstances, Mr. Franz maintained that the two-point reduction authorized under the guidelines inadequately recognized his acceptance of responsibility.

The district court rejected Mr. Franz' request for departure. The court explained that a number of factors made departure inappropriate in this case. For example, it noted that Mr. Franz was an experienced member of the financial community who should have known that his offense was a "gross kind of fraud." R.17 at 30. In addition, the court explained that most people who commit monetary crimes are under financial pressures and need to support their families. *Id.* Many people have a

need for more money, and many people have medical emergencies. Such stresses, however, do not justify taking $60,000 of someone else's money. Thus, while the court recognized that Mr. Franz was undergoing significant and legitimate financial stress and intended to give the money back if he could, it concluded that "all of those things are considered in the guideline range." *Id.* at 31. The court also noted that the two-point credit for acceptance of responsibility was "reasonable" in this case and did not justify departure. *Id.* at 30. Although it refused to depart from the guidelines, the court concluded that the circumstances of this case made a sentence at the low end of the guideline range appropriate. The court thus imposed on Mr. Franz the lowest sentence possible under the guidelines.

## II.

### Analysis

This case presents an important issue of appellate jurisdiction: do the courts of appeals have jurisdiction to review a district court's *refusal* to depart from the sentencing guidelines?

The question before us is essentially one of statutory interpretation. We must therefore begin with the words of the statute. *See United States v. Sager,* 881 F.2d 364, 365 (7th Cir.1989); *United States v. Rosado,* 866 F.2d 967, 969 (7th Cir.1989). Section 3553 of the Comprehensive Crime Control Act of 1984 sets forth the framework to be followed by a district court when imposing sentence on a defendant. Section 3553(b) provides that

[t]he court *shall* impose a sentence of the kind, and within the range, referred to in [§ 3553(a)(4) ] *unless* the court finds that *there exists an aggravating or mitigating circumstance of a kind, or to a*

*degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.*

18 U.S.C. § 3553(b) (emphasis supplied). The grounds for departure are more fully discussed in section 5K2 of the Sentencing Guidelines themselves. *See* §§ 5K2.0. *Grounds for Departure* (Policy Statement) *et seq.*

Section 3742(a) allows a defendant to seek appellate review of the sentence imposed by the district court in four circumstances:

Appeal by a defendant.—A defendant may file a notice of appeal in the district court for review of an otherwise final sentence if the sentence—

(1) was imposed in violation of law;

(2) was imposed as a result of an incorrect application of the sentencing guidelines; or

(3) is greater than the sentence specified in the applicable guideline range to the extent that the sentence includes a greater fine or term of imprisonment, probation, or supervised release than the maximum established in the guideline range, or includes a more limiting condition of probation or supervised release under section 3563(b)(6) or (b)(11) than the maximum established in the guideline range; or

(4) was imposed for an offense for which there is no sentencing guideline and is plainly unreasonable.

18 U.S.C. § 3742(a). The government is granted a parallel right to appeal in four analogous circumstances. *See* 18 U.S.C. § 3742(b).[1]

### A.

1. The language and structure of section 3742(a)

imprisonment, probation, or supervised release than the minimum established in the guideline range, or includes a less limiting condition of probation or supervised release under section 3653(b)(6) or (b)(11) than the minimum established in the guideline range; or

(4) was imposed for an offense for which there is no sentencing guideline and is plainly unreasonable.

18 U.S.C. § 3742(b).

---

1. Appeal by the Government.—The Government, with the personal approval of the Attorney General or Solicitor General, may file a notice of appeal in the district court for review of an otherwise final sentence if the sentence—

(1) was imposed in violation of law;

(2) was imposed as a result of an incorrect application of the sentencing guidelines;

(3) is less than the sentence specified in the applicable guideline range to the extent that the sentence includes a lesser fine or term of

■ The government first invites our attention to section 3742(a), which authorizes appellate review of sentencing decisions. It submits that, because Mr. Franz was sentenced for an offense to which a sentencing guideline was applicable and his sentence was within the applicable guideline range, neither section 3742(a)(3) nor section 3742(a)(4) is implicated by this case. The government further submits that neither section 3742(a)(1) nor section 3742(a)(2) authorizes an appeal of a legal sentence within the appropriate guideline range and applicable statutory maximum sentence. More specifically, with respect to section 3742(a)(1), the government argues that the subsection does not provide appellate jurisdiction in this case because Mr. Franz' sentence was well within the five-year statutory maximum sentence for bank fraud established in 18 U.S.C. § 1344. *See* Government Br. at 17; *see also United States v. Missick*, 875 F.2d 1294, 1301 (7th Cir.1989) ("The sentence imposed on Missick is not in violation of law since it is within the statutory maximum."). With respect to section 3742(a)(2), the government contends that the subsection provides no appellate jurisdiction over a district court's refusal to depart because "departures" are not "guidelines." Thus, a court's refusal to depart *cannot* involve any "incorrect application of the sentencing guidelines." *See* Government Br. at 11 n. 3, 17.

■ We have little difficulty accepting the government's argument with respect to subsections (1), (3), and (4). Subsection (2) is, however, somewhat problematic. Read literally, subsection (2) seems to support appellate review of a refusal to depart from the guidelines. The government's contrary position is based on the fact that the general provisions of the *Sentencing Guidelines Manual* dealing with departures, §§ 5K2.0 *et seq.*, are labeled "policy statements," not "guidelines." Because "departures" are not "guidelines," the government concludes that the district

court's decision not to depart from the guideline range does not involve any "application of the sentencing guidelines" within the meaning of section 3742(a)(2). *See* Government Br. at 11 n. 3, 17.

However, the government's distinction between "guidelines" and "policy statements" is quite rigid and technical. No matter what label was attached to the provisions discussing departures, it is clear that departures are an integral part of the sentencing guideline system promulgated by the United States Sentencing Commission pursuant to 28 U.S.C. § 994. The Sentencing Commission itself does not clearly exclude departures from the category of guidelines. For example, the introduction to the *Sentencing Guidelines Manual* explains that "the guidelines refer to three different kinds of departure." *See Sentencing Guidelines Manual* at 1.7. More importantly, the sentencing guideline that contains the application instructions for the guideline system explicitly directs district courts to consider departures in the last step of the guideline application process. *See* § 1B.1. *Application Instructions* ("'(i) Refer to Parts H and K of Chapter Five, Specific Offender Characteristics and *Departures*, and to *any other policy statements* or commentary *in the guidelines* that might warrant consideration in imposing sentence.") (emphasis supplied).[2] It is therefore apparent that departures are an integral part of the guideline application process. On the basis of a literal reading of the statutory text, one could thus argue that the subject of district court refusals to depart is appropriate for appellate review under section 3742(a)(2).

Therefore, if we were to limit our focus solely to the language of subsection (2), we would have some difficulty with the government's position. However, as the Supreme Court has reminded us recently in *Gomez v. United States*, — U.S. —, 109 S.Ct. 2237, 2240–41, 104 L.Ed.2d 923 (1989), we cannot dwell solely on a single sen-

2. *See also* § 1B1.7. *Significance of Commentary* (commentary and policy statements "may provide guidance in assessing the reasonableness of any departure from the guidelines"; "Failure to follow such commentary could constitute an incorrect application of the guidelines, subjecting the sentence to possible reversal on appeal.

*See* 18 U.S.C. § 3742."); 18 U.S.C. § 3553(a)(5) (when imposing sentence, the court "shall consider—... any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. § 994(a)(2) that is in effect on the date the defendant is sentenced").

tence. Rather, we must view the statutory command as a whole and read it so that each part can play its congressionally appointed role in achieving the "overall statutory scheme." *Id.* In short, we must read the statute "in light of its structure and purpose." *Id.* We therefore must consider subsection (2) in the context of the entire jurisdictional statute and endeavor to produce a harmonious interpretation of the whole. *See, e.g., United States v. Morton,* 467 U.S. 822, 828 & n. 8, 104 S.Ct. 2769, 2773 & n. 8, 81 L.Ed.2d 680 (1984); *Stafford v. Briggs,* 444 U.S. 527, 535, 100 S.Ct. 774, 780, 63 L.Ed.2d 1 (1980); *see also Turner v. United States Parole Comm'n,* 810 F.2d 612, 614 (7th Cir.1987) (when interpreting a statute, courts must look to " 'inferences of [congressional] intent drawn from the statutory scheme as a whole' ") (quoting *Block v. Community Nutrition Inst.,* 467 U.S. 340, 349, 104 S.Ct. 2450, 2455, 81 L.Ed.2d 270 (1984)). Moreover, "[a]s a general rule, a court should not construe a statute in a way that makes words or phrases meaningless, redundant, or superfluous." *Zimmerman v. North American Signal Co.,* 704 F.2d 347, 353 (7th Cir.1983).[3]

A review of the structure of section 3742 as a whole leads us to conclude that Congress did not intend a district court's decision refusing to depart from the guidelines to be appealable. As we have already noted, departures are an integral part of the guideline application process. Thus, a district court's decision *to* depart from the guidelines, no less than a court's decision *refusing* to depart, *could* be characterized as "an incorrect application of the sentenc-

ing guidelines" appealable under 18 U.S.C. § 3742(a)(2). However, Congress thought it necessary to include specifically section 3742(a)(3), providing for appellate review of district court decisions to depart upward from the guidelines, within the statute governing appellate jurisdiction. Therefore, if we were to interpret section 3742(a)(2) to allow appeals for departure-related decisions as incorrect applications of the guidelines, we would render section 3742(a)(3) redundant. Because Congress could not have intended such a specific provision to be mere surplusage, we conclude that Congress did not intend for departure-related decisions, including refusals to depart, to be appealable under section 3742(a)(2).[4] Therefore, no provision of section 3742 provides for appellate review of Mr. Franz' sentence.

### 2. The legislative history

■ Our conclusion that we do not have jurisdiction to review a district court's decision not to depart from the applicable sentencing guideline range is supported by the legislative history of the Sentencing Reform Act of 1984. The Senate Report accompanying the bill that ultimately was adopted as the Sentencing Reform Act makes it clear that not all sentences are to be appealable under section 3742. "This section establishes a *limited practice* of appellate review of sentences in the Federal criminal justice system." S.Rep. No. 225, 98th Cong., 2nd Sess. 149 (1983), *reprinted in* 1984 U.S.Code Cong. & Admin. News 3182, 3332 [hereinafter S.Rep.] (emphasis supplied).[5] While section 3742 was

---

3. *See also In re Clark,* 738 F.2d 869, 872 (7th Cir.1984); *King v. Internal Revenue Serv.,* 688 F.2d 488, 491 (7th Cir.1982); *Atchison, T. & S.F. Ry. v. United States,* 617 F.2d 485, 493–94 (7th Cir.1980) ("It is settled that where a reasonable construction of a statute is possible which gives effect to all of its provisions, a statute will not be read to render some sections unnecessary.").

4. *Cf. National R.R. Passenger Corp. v. National Ass'n of R.R. Passengers,* 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974) (" 'When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode.' ") (quoting *Botany Mills v. United States,* 278 U.S. 282, 289, 49 S.Ct. 129, 132, 73 L.Ed. 379

(1929)); *D'Amato v. Wisconsin Gas Co.,* 760 F.2d 1474, 1481 (7th Cir.1985) ("The statutory grant of one remedy under Section 503 without mention of any other action implies that Congress intended to bar other remedies.").

5. Senate Report 225 accompanied S. 1762, which was passed by the Senate on February 2, 1984. S. 1762 was added to a continuing appropriations bill, H.J. Res. 648, as a floor amendment. This bill was adopted as the Comprehensive Crime Control Act of 1984, Pub.L. 98–473, 98 Stat. 1837 (1984). Title II of that act addresses sentencing reform. *See* S.Rep. at 37, 1984 U.S.Code Cong. & Admin.News 3220; Conyers,

designed to "permit[ ] the appellate process to focus attention on those sentences whose review is crucial to the functioning of the sentencing guidelines system," S.Rep. at 155, 1984 U.S.Code Cong. & Admin.News 3338, the statute also contains "restrictions on the use of appellate review" designed to avoid "unnecessary appeals":

> The limitations on both defendant and government appeal of sentences outside the guidelines based upon the size of the sentence imposed are further restrictions on the use of appellate review of sentences in order to avoid unnecessary appeals. Clearly, sentences at the bottom range are less likely to be abusive to defendants. The same applies to the government when sentences imposed approach the upper range of sentences recommended. The guidelines, therefore, provide a practical basis for distinguishing the cases where review is most need-

ed from those where appeal would most likely be frivolous.

S.Rep. at 154, 1984 U.S.Code Cong. & Admin.News 3337.[6] Thus, it is evident that Congress did not intend section 3742 to be a vehicle for the appeal of *every* sentence and that Congress considered appellate review of most sentences within the guidelines to be unnecessary. Allowing defendants to appeal under section 3742(a)(2) sentences within the applicable guideline range on the ground that the district court's refusal to depart was a misapplication of the guidelines would frustrate Congress' attempt to establish a scheme of limited appellate review. If a district court's refusal to depart were appealable under section 3742(a)(2), every defendant sentenced under the guidelines could create an issue for appeal merely by requesting a departure. Such an expansive interpretation of section 3742(a)(2) clearly would frustrate Congress' expressed desire to avoid unnecessary sentencing appeals.[7]

---

*Unresolved Issues in the Federal Sentencing Reform Act*, 32 Fed.B.News & J. 68, 71 n. 5 (1985).

**6.** *See also* B. George, The Comprehensive Crime Control Act of 1984, at 442–43 ("It should be noted that a sentence must be outside relevant sentencing guidelines … before an appeal can be lodged. Congress drafted the legislation in that way in order to avoid unnecessary appeals….") (citing S.Rep. at 154, 1984 U.S.Code Cong. & Admin.News 3337, *quoted in* text *supra*); Department of Justice, Prosecutors' Handbook on Sentencing Guidelines 75 ("Many sentences will not be appealable under section 3742. *As a general rule, if a sentencing judge imposes a sentence that is consistent with statutory requirements and is within the applicable sentencing guideline … the sentence is not appealable by either the government or the defendant even if one party or the other requested a sentence outside the guidelines which the court declined to impose.*") (emphasis in original), *reprinted in* Practice Under The New Federal Sentencing Guidelines 291, 348 (P. Bamberger ed. 1988).

**7.** Commentators have also suggested that appellate jurisdiction under § 3742(a)(1) might exist where the district court has refused to depart from the applicable guideline. *See* Rezneck, *The New Federal Criminal Sentencing Provisions*, 22 Am.Crim.L.Rev. 785, 792 n. 53 (1985); Conyers, *supra* note 5, at 69–70. The argument that a district court's decision not to depart could be a violation of law making the sentence appealable under § 3742(a)(1) is based on language in 18 U.S.C. § 3553, the statute governing

the imposition of sentences. Section 3553(a) states that "[t]he district court shall impose a sentence sufficient, *but not greater than necessary*, to comply with the purposes set forth" in the statute. 18 U.S.C. § 3553(a) (emphasis supplied). Thus, if the district court refuses to depart and imposes a sentence within the guidelines, the defendant would be able to appeal under § 3742(a)(1) "on the ground that the statutory sentencing mandate was violated." Rezneck, *supra* at 792.

This argument, however, contains the same flaws present in the argument that a refusal to depart is appealable as a misapplication of the guidelines. First, if every sentence that a defendant contended was "greater than necessary" could be appealed under § 3742(a)(1) as a statutory violation, there would have been no need for Congress to have enacted § 3742(a)(3), providing for appeals of sentences *above* the guideline range. Second, *every* defendant could argue that his sentence was "greater than necessary" and thus appealable under § 3742(a)(1) as a sentence in violation of law. Such a broad interpretation of § 3742(a)(1) would be contrary to Congress' desire to provide for *limited* appellate review of sentences.

The language of § 3553(a) can be interpreted in a way consistent with both the more specific statutory language of § 3742 and Congress' intent to avoid unnecessary appeals: by requiring district courts to impose sentences that are sufficient, but no greater than necessary, § 3553(a) instructs those courts to exercise their discretion in determining what sentence within the guideline range is appropriate. In other words,

We also note that, while the government's distinction between "guidelines" and "policy statements" seems facially superficial, the legislative history makes the distinction more plausible. The fact that references to departures are found primarily in the Sentencing Commission's policy statements further undermines the argument that a refusal to depart should be appealable under section 3742(a)(2) as a misapplication of the guidelines. The Senate Report makes it quite clear that a district court's failure to apply properly a policy statement is *not* appealable:

It should be noted that a sentence that is inconsistent with the sentencing guidelines is subject to appellate review, *while one that is consistent with the guidelines but inconsistent with the policy statements is not.* This is not intended to undermine the value of the policy statements. It is, instead, a recognition that the policy statements may be more general in nature than the guidelines and thus *more difficult to use in determining the right to appellate review.*

S.Rep. at 167, 1984 U.S.Code Cong. & Admin.News 3350 (emphasis supplied) (footnotes omitted). This evidence of congressional intent thus supports our conclusion that section 3742(a)(2) does not provide appellate jurisdiction over refusals to depart.

3. The case law

We note that our determination that we lack jurisdiction is in accord with the recent decision of the Second Circuit in *United States v. Colon*, 884 F.2d 1550 (2nd Cir. 1989). There, the court held that the structure of the statute, as well as the inherently discretionary nature of the decision not to depart, make clear that Congress did not intend an appeal under these circumstances. *Id.*, at 1552–56.

Our decision is also compatible with the determination reached by our colleagues in the Fifth Circuit. That court has held that a district court's refusal to depart from the

guidelines will be upheld "unless the refusal was in violation of law." *United States v. Buenrostro*, 868 F.2d 135, 139 (5th Cir. 1989). Appellate review under 18 U.S.C. § 3742(a)(2) is not available because denial of a request for departure does not involve any application of the guidelines. *Id.* Where the defendant fails to suggest any law that the district court violated in refusing to depart, his appeal will be rejected. *Id.* (sentence affirmed where "the gist of [defendant's] claim [was] that the district court gave him precisely the sentence required by law"). Thus, under the Fifth Circuit approach, "[a] claim that the district court refused to depart from the guidelines and imposed a lawful sentence provides no ground for relief." *Id.; see also United States v. Rojas*, 868 F.2d 1409 (5th Cir. 1989); *United States v. Velasquez*, 868 F.2d 714 (5th Cir.1989); *United States v. Gallegos*, 868 F.2d 711 (5th Cir.1989).

■ We agree with the Fifth Circuit that, when a district court's refusal to depart is in violation of law, appellate review of that decision is available under 18 U.S.C. § 3742(a)(1). A court has the obligation to employ fair procedures to determine the accuracy of information used in sentencing. *United States v. Agyemang*, 876 F.2d 1264, 1270 (7th Cir.1989). Every factual inaccuracy does not amount to a constitutional violation. *Villa v. Fairman*, 810 F.2d 715, 718–19 (7th Cir.1987); *Johnson v. United States*, 805 F.2d 1284 (7th Cir.1986). However, as we have noted repeatedly, a defendant's constitutional rights can be violated if he demonstrates "grave doubt as to the veracity of the information ... [and] that the court relied on that false information in determining the sentence." *United States v. Eschweiler*, 782 F.2d 1385, 1387 (7th Cir.1986). *See United States v. Nowicki*, 870 F.2d 405, 408 (7th Cir.1989); *United States v. Blake*, 841 F.2d 203, 206 (7th Cir.1988); *United States v. Rone*, 743 F.2d 1169, 1171 (7th Cir.1984). Although the case before us does not present such cir-

the court need not impose the maximum sentence authorized by guidelines. Because this interpretation is compatible with the language and structure of § 3742 and the intent of Con-

gress, it should be preferred over a broader interpretation that would use § 3553(a) as a vehicle to obtain appellate review of refusals to depart under § 3742(a)(1).

cumstances and Mr. Franz does not argue explicitly that his sentence was imposed in violation of law for any other reason, we assume that, in such a case, appellate review under section 3742(a)(1) would be available.

■ We also note that the Eleventh Circuit has recently held that "[t]he Sentencing Reform Act prohibits a defendant from appealing a sentencing judge's refusal to make a downward departure from the guidelines sentencing range." *United States v. Fossett*, 881 F.2d 976, 979 (1989) (citing 18 U.S.C. § 3742(a)(3), "allowing defendant to appeal only an upward departure from the guideline range"); *see also United States v. Davis*, 878 F.2d 1299, 1301 (11th Cir.1989) ("The district court considered [the appellant's] request for a departure and declined to grant it. Its decision is not subject to challenge. See 18 U.S.C. § 3742(a)."). In *Fossett*, the Eleventh Circuit also made clear that, when the defendant does not challenge the merits of the court's refusal to depart, but instead contends that the district court refused to depart because it did not believe that it had the statutory authority to depart from the guideline range, a claim cognizable on appeal has been raised. *See Fossett, supra,* at 979 (citing 18 U.S.C. § 3742(a)(1) & (a)(2)). To the extent that this reservation, like that of the Fifth Circuit, is based on the appealability of sentencing decisions that are "contrary to law," there is, as we have noted already, no incompatibility with our holding today. However, the Eleventh Circuit's citation to subsection (2) gives us pause. This lone citation, standing without

any further elaboration, prevents our determining the extent, if any, of our disagreement.[8]

### B.

■ Although section 3553(b) authorizes a district court to depart from the sentencing range prescribed by the guidelines, the statute's legislative history makes it quite clear that a court is *not* required to depart in every situation where it is allowed to do so:

> The provision recognizes ... that even though the judge finds an aggravating or mitigating circumstance in the case that was not adequately considered in the formulation of the guidelines, the judge might conclude that the circumstance does not justify a sentence outside the guidelines. Instead, he might conclude that a sentence at the upper end of the range in the guidelines for an aggravating circumstance, or at the lower end of the range for a mitigating circumstance, was more appropriate or that the circumstance should not affect the sentence at all.

S.Rep. at 79, 1984 U.S.Code Cong. & Admin.News 3262. The policy statements in the *Sentencing Guidelines Manual* also emphasize the discretionary character of the district court's departure decision:

> The controlling decision as to whether and to what extent departure is warranted can *only* be made by the court *at the time of sentencing....* Presence of any [factor not adequately considered by the

8. We do note, however, that the theoretical basis for the Eleventh Circuit's basic decision that appellate review is not available in failure to depart cases is somewhat different than our own. In *Fossett*, the Eleventh Circuit explained that 28 U.S.C. § 1291 "indisputably" conferred on the court jurisdiction over such an appeal. *See Fossett, supra*, at 881 F.2d at 978–79. Section 3742 did not alter the court's conclusion because that statute "does not regulate the jurisdiction of the courts of appeals themselves; rather, [it] defines the claims that the court of appeals may hear in reviewing an appeal." *Id.* at 979. We respectfully disagree. Section 3742 does more than define the claims that we may hear; it establishes those cases in which the defendant or the government is *authorized* to

appeal. *See, e.g.,* 18 U.S.C. § 3742(a) ("A defendant *may file a notice of appeal* in the district court for review of an otherwise final sentence *if* the sentence—[satisfies the statutory criteria.]") (emphasis supplied). Certainly we do not have jurisdiction over appeals that a party is not statutorily authorized to file. *Cf. United States v. Horak*, 833 F.2d 1235, 1247 n. 10 (7th Cir. 1987) (§ 1291 does not provide appellate jurisdiction where government does not have statutory authority to take appeal from district court decision; "Section 1291 establishes statutory authority in *courts* ... to hear appeals; the statute does not purport to grant to the government the power to *bring* all appeals without limitation.") (emphasis in original).

Commission] *may* warrant departure from the guidelines, under some circumstances, *in the discretion of the sentencing judge.*

§ 5K2.0. *Grounds for Departure* (emphasis supplied). The government contends that appellate review of a district court's refusal to depart is inappropriate because the district court's decision not to depart is within its *complete discretion.* Thus, submits the government, departure is *never* mandatory, and a district court's *purely* discretionary refusal to depart could never be overturned on appeal. *See* Government Br. at 14–17.

Since we have already determined that the structure of the statute does not authorize an appeal from a refusal to depart from the guidelines, we need not determine definitively whether this ground would, standing alone, bar appellate review. However, we note that the Second Circuit held that the inherently discretionary nature of the decision not to depart is evidence of a congressional intent that appellate review is not permitted under these circumstances. Previously, in *United States v. Paulino,* 873 F.2d 23 (2d Cir.1989), the court rejected the defendant's contention that the district court erred by failing to depart from the guidelines in his case because the factors relied upon by the defendant (his minimal role in the offense and his insubstantial criminal record) had been explicitly considered by the Commission when formulating the guidelines and had been taken into account by the district court in its application of the guidelines. The Second Circuit explained that, "[u]nder such circumstances, a decision not to depart from the applicable guideline range cannot possibly be in excess of the discretion confided in sentencing judges, *even if we make the doubtful assumption that the discretion not to depart could ever be exceeded.*" 873 F.2d at 25 (emphasis supplied); *see also United States v. Palta,* 880 F.2d 636 (2d Cir.1989). Our conclusion that section 3742(a) does not provide for appeal of a sentence where the district court has decided not to depart from the guidelines and, instead, imposed sentence within the guidelines range is thus strengthened by the fact that both Congress and the Sentencing Commission have given the district courts broad discretion with regard to the decision whether to depart or not.

### Conclusion

Because section 3742(a) does not provide for appellate review of Mr. Franz' sentence, we must dismiss his appeal for want of jurisdiction.

DISMISSED FOR WANT OF JURISDICTION.