**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Michael EARVIN, Defendant–
Appellant.**

No. 01–4044.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 4, 2002.

Decided Nov. 20, 2002.

Before BAUER, KANNE, and EVANS,
Circuit Judges.

**ORDER**

Michael Earvin pled guilty of three drug and firearms counts and agreed to cooperate with the government in its investigation of other criminal activity. At the time of the sentencing, the government indicated that, after the extent of Earvin's cooperation became known, it would file a motion pursuant to Rule 35 of the Federal Rules of Criminal Procedure and request a downward departure of his sentence under § 5K1.1 of the United States Sentencing Guidelines. That is, in fact, what happened, and Earvin was resentenced on the basis of a 3–level downward departure. But now he complains first, that his due process rights were violated because the district court did not require the government to provide him with discovery regarding the extent of the information provided by other cooperators so that the extent of his cooperation could be compared with theirs, and second, that the judge did not independently analyze the nature and extent of the other cooperators and rather relied on the government's analysis of the comparative value of the information provided by various people.

Earvin provided the government with information regarding a narcotics ring involving Lonnie Slocum and seven others. It was this information which led to the motion for a downward departure. As it turned out, however, all eight Slocum defendants also cooperated with the government, which, it appears, detracted from the value of the information Earvin provided. The government apparently believed that, while Earvin should be rewarded for his cooperation, a 3–level departure (and not more) was the appropriate measure of that cooperation. Earvin wanted to independently compare his cooperation with

that of the others so that potentially he could present the judge with a basis for a greater departure. As it was, he thinks the judge did not exercise his own discretion in the extent of the departure, but rather simply ordered the departure the government recommended.

He asks too much. We review a district court's discovery decision for an abuse of discretion. *United States v. Moore*, 115 F.3d 1348 (7th Cir.1997). We also review a departure from the guidelines by the same standard. *Koon v. United States*, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). Even when the government files a Rule 35 motion and the district court rejects it, we lack "jurisdiction to review the district court's decision where the refusal to depart downward is an exercise of discretion." *United States v. Correa*, 995 F.2d 686 (7th Cir.1993). To the extent that we have jurisdiction of this appeal, we find no error.

A departure based on a defendant's cooperation is governed by U.S.S.G. § 5K1.1, which sets out factors the district judge must consider. They include the significance and usefulness of the assistance, "taking into consideration the government's evaluation of the assistance rendered"; the truthfulness, completeness, and reliability of the information; the nature and extent of the assistance; the risk to the defendant resulting from his assistance; and the timeliness of the assistance. The guideline is silent as to comparisons among cooperators.

At the sentencing hearing the prosecutor explained the steps the government (we assume in the Eastern District of Wisconsin) takes in arriving at a recommendation on a departure:

> The assistant who handled the cooperating defendant and who handled the underlying prosecution that they cooperated in writes a memo to a substantial assistance committee, which consists of the United States Attorney, the criminal chief and the section chiefs in the criminal division. That memo details the underlying case that the defendant was prosecuted in, ... outlines the cooperation that he provided and makes a recommendation in terms of the factors under 5K. However useful it was in the prosecution, in putting the indictment together, did he testify, did he testify before the Grand Jury, were the debriefing reports turned over redacted or underacted, that sort of thing.
>
> The committee then tries to compare this defendant to all other defendants that are receiving 5K motions to determine, for example, in this case is a three-level downward departure consistent with other defendants whose cooperation was of the same extent of usefulness. . . .

The prosecutor also stated that when a decision is made to indict a case, the information provided by cooperators is used, but also all the other things done in the investigation are considered, such as telephone records and search warrants. So that if a defendant such as Earvin were to meaningfully evaluate the prosecutor's recommendation, he would need to see all of the discovery in the case—which in this case would be all the discovery in a case separate from his.

Not surprisingly, the government vigorously resisted providing the requested discovery. The concern was to maintain the integrity of other investigations. That is not to say that no information was provided. Earvin was given his debriefing reports and grand jury testimony. As we will see in a moment, Earvin does not have a right to contest the extent of the downward departure or, in fact, whether he will receive one. It follows, then, that his request for extensive discovery is far too

broad. There is simply no abuse of discretion in the denial of this discovery order.

Earvin also argues that the district judge failed to conduct an independent analysis of the value of other cooperators, and rather relied exclusively on the government's analysis. A reading of the transcript of the hearing reveals otherwise. Furthermore, we decline to assume that because a judge agrees with the government's recommendation in a certain case he has failed to exercise independent judgment.

The judge himself rejected any notion that he blindly followed government recommendations:

> I would guess that I, on the substantial assistance motions, I don't really know, but I would guess more often than not, I have done something other than what the government recommended.

At another point the prosecutor said, "[A]nd actually certainly this court is going to make its own independent determination, there's no doubt about that." The court acknowledged the comment: "Once in awhile we break out of the track." To which the prosecutor again said, with what sounds like bitter experience, "There's no doubt about that." The transcript makes no reference to knowing laughter at this point, but somehow we hear it. And as if to smooth things over, the prosecutor continues, "And of course the parties want the Court to do that." Or as Martha Stewart would say, "It's a good thing." And of course it is a good thing. We have no doubt, based on the record in this case, that the district judge was well aware of his discretion and properly exercised it.

More importantly, however, even had the court declined to depart downward at all, we would find that we had no jurisdiction to review the decision. *United States*

v. *Franz*, 886 F.2d 973 (7th Cir.1989). Here, the judge did not refuse to depart. In fact, he granted a departure and then sentenced Earvin at the low end of the guideline range after the departure was applied. It is hard to see why there is a complaint. As we said in *United States v. Gant*, 902 F.2d 570, 573 (7th Cir.1990), given that we do not have jurisdiction to review the refusal to grant a downward departure, it "would be anomalous to find that we have jurisdiction over the appeal of a defendant who actually benefited from a downward departure that he regards as being niggardly." As it attacks the extent of the downward departure, this appeal is dismissed. The sentence imposed on Michael Earvin is AFFIRMED.