**Philip Robert DISTILLATOR, Jr., Plaintiff-Appellant,**

v.

**Benjamin R. CIVILETTI et al., Defendants-Appellees.**

**No. 79–2032.**

United States Court of Appeals, Fifth Circuit.

Feb. 21, 1980.

---

Melvyn Carson Bruder, Dallas, Tex., for plaintiff-appellant.

Richard B. Vance, Asst. U. S. Atty., Fort Worth, Tex., for defendants-appellees.

Before AINSWORTH, INGRAHAM and GARZA, Circuit Judges.

PER CURIAM:

Philip Robert Distillator, Jr., appeals granting of summary judgment in favor of defendants in his suit seeking mandamus relief to require defendants to recompute the length of his sentence. Plaintiff-Distillator contends that defendant's actions have wrongfully increased his sentence and consequently are imprisoning[1] him contrary to due process of law. We affirm the fact findings of the District Court but reverse granting of summary judgment in favor of the defendants, and grant the plaintiff's requested relief of habeas corpus.

### Chronology of Events

On February 25, 1971, in Cause No. 70–149–CF, plaintiff was convicted in the United States District Court for the Southern District of Florida and was assessed a sentence of six years confinement pursuant to 18 U.S.C. § 4208(a)(2). Plaintiff remained in the custody of the Attorney General at the F.C.I. at Fort Worth, Texas, until June 22, 1973, when he was paroled with 1,202 days remaining to be served.

On April 9, 1975, a United States Magistrate in Miami, Florida, issued a warrant for plaintiff's arrest on charges of mail fraud in violation of 18 U.S.C. § 1341. On May 14, 1975, the United States Board of Parole issued a warrant for plaintiff's arrest, alleging that plaintiff had violated the conditions of his parole.

On July 14, 1975, plaintiff was arrested in Miami, Florida, by the United States Marshal who possessed both warrants for his arrest. On that day, the mail fraud warrant was executed, and plaintiff was com-

---

1. After filing of this appeal, the plaintiff was released from prison but remains on parole. The defendant's motion for dismissal, based on mootness, was denied, since the serious collateral consequences of parole restrictions remain a deprivation to plaintiff's constitutional rights.

mitted to jail pending the mail fraud charges. Plaintiff was indicted, pleaded guilty to the mail fraud charge, and was assessed a five year sentence pursuant to 18 U.S.C. § 4208(a)(2).

Pursuant to the commitment order in the mail fraud case, Cause No. 75–428–CR–CA, plaintiff was received at the F.C.I. at Fort Worth, Texas, on November 14, 1975.[2] On December 4, 1975, plaintiff was sent a Sentence Computation Record (BP–5), advising him that his mail fraud sentence had begun October 1, 1975, and that his confinement was predicated on that sentence. No mention was made of the original sentence. On April 15, 1976, plaintiff was sent a revised BP–5, indicating that the remainder of his original sentence in Cause No. 70–149–CF had begun July 14, 1975; that he had begun serving his sentence for the mail fraud conviction, Cause No. 75–428–CR–CA, on July 14, 1975; and that both sentences were running concurrently. On April 21, 1976, plaintiff received yet another revised BP–5, indicating that he had not yet begun serving the sentence in the mail fraud case, Cause No. 75–428–CR–CA; that he was then serving only the remainder of his original sentence, Cause No. 70–149–CF; and that the mail fraud sentence would not commence until he had completed serving the original sentence. The effect of the last BP–5 was to increase plaintiff's sentence from five years, two months and sixteen days to eight years, three months and fourteen days. From May 13, 1976, through September 29, 1976, plaintiff unsuccessfully sought correction of his sentence computation through administrative procedures. After exhausting his adminis-

trative remedies, plaintiff filed suit against the Attorney General, the Director of the Bureau of Prisons, and the Warden of F.C.I. in Fort Worth, Texas, seeking relief in the nature of mandamus.

### The Dispute

The controversy centers on the parole violation warrant issued May 14, 1975. The defendants contend that this warrant was executed on July 14, 1975, when the plaintiff was arrested. The plaintiff contends that the warrant was not executed on July 14, 1975, and that it remained unexecuted until, at earliest, January 26, 1976, when the Parole Commission sent a parole violator warrant to F.C.I. at Fort Worth,[3] with instructions to execute the warrant when plaintiff was released from his 1975 sentence. The date of execution of the parole violation warrant is important, because of the 1975 sentence received by plaintiff in the mail fraud case. The sentencing court committed plaintiff to the custody of the Attorney General for a period of five years and qualified the commitment with the following statement:

It is further ORDERED that the above sentence is to run consecutively with any sentence for violation of parole.

The Court below held that this qualification would require the mail fraud sentence not to begin until immediately following the completion of the original sentence imposed in Cause No. 70–149–CF. We agree that this is the only interpretation that can be given to the qualification. The Court below then correctly concluded that the new sentence could be "stacked" only if plaintiff

---

**2.** Plaintiff was assigned a new Register Number upon arrival, consistent with his being received as a new prisoner, not as a parole violator.

**3.** The United States Board of Parole held a parole revocation hearing on its F.C.I., Fort Worth, April, 1976, docket, pursuant to this later served warrant, and at that time revoked plaintiff's 70–149–CF parole. In *Moody v. Daggett*, 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976), the Supreme Court discussed the Board of Parole procedures, applicable here, prior to the Parole Commission and Reorganization Act of 1976. An option of the Board was to lodge

the parole violator warrant as a detainer at the institution of incarceration, execute the warrant upon the parolee, revoke parole, and the remainder of the parolee's reinstated original sentence would run concurrently with the subsequent sentence from the time of the execution of the warrant. We find the case at hand fitting the above discussed option like a glove. Plaintiff's 1971 sentence began to run immediately upon his parole revocation and ran concurrently with the 1975 sentence he was then serving. Accordingly, plaintiff's 1971 sentence has now been satisfied.

was at that time serving the original sentence, and that for plaintiff to be serving his original sentence, the parole violation warrant must had to have been executed.

Therefore, the crucial issue becomes whether or not the parole violator warrant had been executed. The dispute on this point arises because of the manner in which the Marshal's return was completed. The return states that the warrant was executed by arresting plaintiff July 14, 1975, in Miami, Florida, and committing him to county jail. The return then continues:

Further RETURNED UNEXECUTED SENTENCE ON NEW CHARGE AND TRANSPORTED TO FT. WORTH, TEXAS 11/14/75, the institution designated by the Attorney General with a copy of the Warrant and Referral Sheet.

The Court below looked to the law in effect July 14, 1975, regarding execution of parole violation warrants and retaking of a parole violator under such warrant,[4] and viewed the requirement for execution as a two-step process: first, the arresting officer must take the prisoner into custody, and, second, the prisoner must be committed to the custody of the Attorney General. Due to the Marshal's return, the Court found, as a matter of law, that the parole violation warrant had not been executed, since, even though plaintiff had been arrested on October 1, 1975, he had not been committed to the custody of the Attorney General under the warrant. Therefore, since the warrant had not been executed, the plaintiff had not yet begun to serve his original sentence. Logically, the Court implicitly held that plaintiff's mail fraud sentence could not be "stacked" to his original sentence, since there was simply no sentence to stack upon.

The defendants argue that the findings of the Court below, regarding the warrant's execution, are clearly erroneous. The Marshal's return states "RETURNED UNEXECUTED" and speaks for itself. To ignore the Marshal's handwritten return would subvert the entire purpose of the return—to show the official disposition of the warrant. We fail to see how reasonable minds could differ on this issue, much less to the extent as requiring reversal of the District Court.

## The Remedy

After finding the factual issues in favor of plaintiff, the District Court considered the remedy of mandamus as requested by the plaintiff. In the light of his factual determinations, the Court viewed the 1975 mail fraud sentence as, at best, ambiguous. The Court concluded that the plaintiff could obtain adequate relief by seeking correction of his sentence from the sentencing court under Rule 35,[5] and, therefore, denied the requested relief as being inappropriate. See *Kerr v. United States District Court,* 426 U.S. 394, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976); *Carter v. Seamans,* 411 F.2d 767 (5th Cir. 1976), *cert. denied* 397 U.S. 941, 90 S.Ct. 953, 25 L.Ed.2d 121 (1970).

Defendants argue that the resulting "ambiguity" that exists in the mail fraud sentence constitutes an "illegal" sentence within the purview of Rule 35, and, therefore, the sentencing court not only has jurisdiction, but is also the most appropriate forum for resolution of this case. The plaintiff argues that a sentence of five years for violation of 18 U.S.C. § 1341 is a valid sentence, and, therefore, since plaintiff did not petition the sentencing court within 120 days, the sentencing court has lost jurisdic-

---

**4.** 18 U.S.C. § 4205 provides:

A warrant for the retaking of any United States prisoner who has violated his parole, may be issued only by the Board of Parole or a member thereof and within the maximum term or terms for which he was sentenced. The unexpired term of imprisonment of any such prisoner shall begin to run from the date he is returned to the custody of the Attorney General under said warrant, and the time the prisoner was on parole shall not diminish the time he was sentenced to serve. 18 U.S.C. § 4206 provides:

Any officer of any Federal penal or correctional institution, or any Federal officer authorized to serve criminal process within the United States, to whom a warrant for the retaking of a parole violator is delivered, shall execute such warrant by taking such prisoner and returning him to the custody of the Attorney General.

**5.** Federal Rule of Criminal Procedure No. 35 provides that the sentencing court may correct an illegal sentence at any time, but may correct a legal sentence imposed within 120 days after the sentence is imposed.

tion. However, we need not address either of these arguments, for there is no ambiguity in the 1975 mail fraud sentence, and, therefore, clarification under Rule 35 is not necessary for a proper disposition of this case. The fact that the sentencing court may have thought that plaintiff was serving time under his 1971 sentence at the time of imposition of the 1975 sentence does not render the five-year sentence ambiguous. The qualification that the sentence "run consecutively . . ." is surplusage, and the 1975 sentence began to run from the date the plaintiff was received at F.C.I. at Fort Worth, Texas, with credit given towards his 1975 sentence from the date of his arrest on July 14, 1975. Considering the good time credit required by 18 U.S.C. § 4161, plaintiff has satisfied his 1975 sentence.

Due to the delays in disposition of this case over which plaintiff had no control, the plaintiff has urged at oral argument that the most suitable remedy would be issuance of a writ of habeas corpus, and, therefore, asks that his appeal be treated as a petition for such relief, pursuant to 28 U.S.C. § 2241. We agree with plaintiff's requested relief, grant his writ, and hereby order his discharge from parole.

AFFIRMED IN PART AND REVERSED IN PART.