UNITED STATES of America,
Plaintiff–Appellee,

v.

Donald SAGER, Defendant–Appellant.

No. 89–1423.

United States Court of Appeals,
Seventh Circuit.

Argued June 5, 1989.

Decided July 26, 1989.

Robert M. Barnes, Scott C. Newman, Mark D. Stuaan, Asst. U.S. Attys., Indianapolis, Ind., for U.S.

R. Scott McFarland, Muncie, Ind., for Donald Sager.

Before CUMMINGS, WOOD, Jr., and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

The appellant, Donald Sager, appeals his conviction under 18 U.S.C. § 1071 for harboring or concealing Carlos Aubrey, whose apprehension had been ordered by the United States Parole Commission. In the district court, Mr. Sager argued that 18 U.S.C. § 1071 does not proscribe harboring or concealing a parole violator because the order issued by the Parole Commission was not an arrest warrant within the meaning of the statute. The district court rejected this argument and entered a judgment of conviction. We affirm.

I.

Background

Donald Sager and Carlos Aubrey had been codefendants in a bank robbery case. Both were convicted, imprisoned, and eventually released on parole. Both were subject to the standard condition that, while on parole, a parolee may not associate with any person who has a prior criminal record. Mr. Sager had requested, in April 1988, permission to see Mr. Aubrey but his request was denied by his parole officer.

In May 1988, the United States Parole Commission issued a warrant reciting that Carlos Aubrey had violated one or more conditions of his release [1] and requiring that he be taken into custody. The evidence at trial, which need not be set forth in detail here, established, to the satisfac-

---

1. The original application for the warrant alleged that Mr. Aubrey had failed to submit monthly supervision reports and to keep his monthly appointment with his parole officer. It also alleged that he had failed to report a change in residence and failed to maintain gainful employment. By supplement dated July 28, 1988, it further alleged that he had associated with a known convicted felon, had unauthorized possession of a dangerous weapon, and had endangered a child to avoid apprehension.

tion of the jury,[2] that, during June 1988, Mr. Sager assisted Mr. Aubrey in eluding detection.

## II.

### Submission on Appeal

Mr. Sager's argument can be stated succinctly. The indictment charged him with harboring and concealing a person "for whose arrest a warrant had been issued by the United States Parole Commission." In Mr. Sager's view, section 1071[3] does not proscribe such conduct. Rather, he submits, the statute only proscribes harboring and concealing a person for whom a warrant has been issued pursuant to Rule 4 of the Federal Rules of Criminal Procedure—a person sought because there is probable cause to believe he has committed a crime. In short, Mr. Sager argues that he harbored and concealed a person wanted for *return* to the custody of the Attorney General for service of an already existing sentence; the statute, on the other hand, only precludes harboring or concealing a person wanted to answer for a crime for which he has not yet been convicted.[4]

In support of his position, Mr. Sager invites our attention to the statutory language. The statute dealing with parole violations, 18 U.S.C. § 4213, empowers the Parole Commission to "issue a warrant and *retake* the parolee." 18 U.S.C. § 4213(a)(2) (emphasis added). By contrast, Rule 4, dealing with the apprehension of a person wanted to answer a criminal charge, employs the word "arrest." Fed.R.Crim.P. 4. Similarly, 18 U.S.C. § 3606, dealing with the apprehension of probation violators and those on supervised release, speaks in terms of "arrest."[5] Therefore, Mr. Sager

argues, section 1071 is not applicable because there was no outstanding *arrest* warrant for Carlos Aubrey at the time Mr. Sager allegedly concealed him.

Mr. Sager attempts to bolster the foregoing statutory argument by suggesting that the federal criminal code contains another section that would have been a more appropriate basis for any criminal prosecution. Specifically, he notes that 18 U.S.C. § 1072 punishes harboring "any prisoner after his escape from the custody of the Attorney General or from a Federal penal or correctional institution." He argues that prosecution under this statute, as opposed to section 1071, would be consistent with the significant body of case law that considers the parolee to be a person "in custody."

Finally, Mr. Sager invokes the so-called "rule of lenity" and submits that a criminal statute must be strictly construed in favor of the defendant.

## III.

### Discussion

#### A.

As in any case of statutory interpretation, our task is to ascertain the intent of Congress and to apply it. In fulfilling this mandate, we must begin with the words of the statute. *See United States v. Rosado*, 866 F.2d 967, 969 (7th Cir.1989), *petition for cert. filed*, June 12, 1989; *see also Indiana Port Comm'n v. Bethlehem Steel Corp.*, 835 F.2d 1207, 1210 (7th Cir.1987). Furthermore, in our reading of the statute's text, we must assume that Congress intended those words to have their plain and ordinary meaning. *See Rosado*, 866

---

**2.** Mr. Sager does not contest the sufficiency of the evidence to support a conviction if the government is correct on the legal issue presented on this appeal.

**3.** *See* note 6, *infra.*

**4.** Mr. Sager's brief presents this argument in five parts, each focusing on a different point in the proceeding in the district court where he made this argument. Because only one legal argument is actually made, there is no need for us to address it separately in all the procedural

contexts in which it was repeated. We note that the government makes no suggestion that the issue was not properly preserved.

**5.** Section 3606, in pertinent part, provides:

If there is probable cause to believe that a probationer or a person on supervised release has violated a condition of his probation or release, he may be arrested, and, upon arrest, shall be taken without unnecessary delay before the court having jurisdiction over him. 18 U.S.C. § 3606 (1985 & Supp.1989).

F.2d at 969; *United States v. Rawlings*, 821 F.2d 1543, 1545 (11th Cir.), *cert. denied*, 484 U.S. 979, 108 S.Ct. 494, 98 L.Ed.2d 492 (1987); *United States v. Yeatts*, 639 F.2d 1186, 1189 (5th Cir. Unit B), *cert. denied*, 452 U.S. 964, 101 S.Ct. 3115, 69 L.Ed.2d 976 (1981). If, upon such a reading, the intent of Congress is manifest, our task is complete. In reading a statute, it is, of course, important to remember that words and phrases of the text cannot be read in isolation. Congress intended that the entire section have a coherent meaning; each word and phrase is a building block to that end. In the task at hand, then, we must focus not only on the word "arrest" in section 1071 but also on the other words and phrases that accompany it.[6]

A reading of section 1071 makes its significant breadth immediately apparent. It proscribes harboring or concealing "any person for whose arrest a *warrant or process* has been issued under the provisions of *any* law of the United States." 18 U.S.C. § 1071 (emphasis added). By these words, Congress plainly meant to proscribe one basic activity: harboring or concealing a person whose liberty has been ordered curtailed by the order of a tribunal acting under the authority of any federal law. The gravamen of the offense is defiance of a lawful governmental decision to restrain physically a person by concealing that person from the authorities. That authority is defied whether the order was directed at the capture of a felon still at large or a parolee whose limited liberty must be curtailed even further. If Congress had wished to limit the section's ambit to harboring those who flee initial criminal process, it would have been an easy matter to write such a narrow prohibition. However, Congress decided to proscribe a wider range of activity.

### B.

Mr. Sager's argument that a parolee is already "in custody" and therefore cannot be the subject of an arrest warrant does not shed much light on the precise issue of interpretation before us. Certainly, there cannot be any doubt that, throughout the period of parole, a parolee "remain[s] in the legal custody and under the control of the Attorney General"—the officer to whom he was committed by virtue of his sentence. 18 U.S.C. § 4210(a).[7] This preexisting limitation on a parolee's freedom undoubtedly places the parolee in a different situation than the ordinary citizen with respect to the rights he may assert when confronted by a governmental decision to take him into physical custody. *See United States v. Polito*, 583 F.2d 48, 55 (2d Cir.1978). Here, however, our perspective must be decidedly different. We do not define "arrest" for purposes of delineating the rights of the parolee. Rather, we must interpret a statute that punishes those who interfere with lawful governmental process designed to bring another into physical custody. When viewed from this perspective, the fact that a parolee already enjoys diminished liberty hardly counsels against characterizing the taking of a parolee into custody as an arrest. Nor does it suggest that Congress wished to differentiate between those who frustrate the Parole Commission's lawful process to effect such an apprehension and those who frustrate the process of a court designed to require a person to answer a criminal charge or an allegation of probation violation.

While it is true that a parolee is "in custody," it is also true that he retains a legally cognizable liberty interest that is significantly greater than that enjoyed by one who is incarcerated. *See Morrissey v.*

6. Section 1071, in pertinent part, provides:
   Whoever harbors or conceals any person for whose arrest a warrant or process has been issued under the provisions of any law of the United States, so as to prevent his discovery and arrest, after notice or knowledge of the fact that a warrant or process has been issued for the apprehension of such person, shall be

fined not more than $1000 or imprisoned not more than one year, or both....
18 U.S.C. § 1071 (1979 & Supp.1989).

7. Although section 4210 was repealed effective November 1, 1987, this section remains applicable for five years to individuals who committed offenses prior to November 1, 1987. *See* 18 U.S.C. §§ 4201–4218 (1985 & Supp.1989).

*Brewer*, 408 U.S. 471, 482, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). To deprive him of that liberty interest and place him in a custodial status is indeed to arrest him, as that term is usually understood.[8] We must assume that Congress intended the term to be given such a common-sense meaning. Certainly, this conclusion is not undercut simply because Congress did not use the term "arrest" in section 4213 when it was dealing exclusively with the process of parole revocation.[9] There, without unnecessarily limiting the ambit of the section, Congress was able to employ the more descriptive phrase "retake." However, even in that section, Congress manifested, in the later subsections of section 4213, its understanding that the execution of a "warrant to retake" effectuates an "arrest." The physical deprivation of liberty described in subsection (d) certainly constitutes a sufficient deprivation of liberty to constitute an "arrest." Indeed, the Parole Board [10] and other courts of appeals [11] have characterized this event as an arrest.

No other section of the federal criminal code explicitly punishes harboring a person for whom a warrant of retaking has issued. However, the fact that a parolee is already "in custody" hardly suggests that Congress would not intend to punish a person who frustrates an effort to increase further the level of that custody. Indeed, the contrary conclusion is the more logical one. The parolee is already under the special supervision of the government. Interfer-

---

**8.** Black's Law Dictionary defines "arrest" as "[t]o deprive a person of his liberty by legal authority." Black's Law Dictionary 100 (5th ed. 1979).

**9.** Section 4213 reads as follows:

(a) If any parolee is alleged to have violated his parole, the Commission may—

(1) summon such parolee to appear at a hearing conducted pursuant to section 4214; or

(2) issue a warrant and retake the parolee as provided in this section.

(b) Any summons or warrant issued under this section shall be issued by the Commission as soon as practicable after discovery of the alleged violation, except when delay is deemed necessary. Imprisonment in an institution shall not be deemed grounds for delay of such issuance, except that, in the case of any parolee charged with a criminal offense, issuance of a summons or warrant may be suspended pending disposition of the charge.

(c) Any summons or warrant issued pursuant to this section shall provide the parolee with written notice of—

(1) the conditions of parole he is alleged to have violated as provided under section 4209;

(2) his rights under this chapter; and

(3) the possible action which may be taken by the Commission.

(d) Any officer of any Federal penal or correctional institution, or any Federal officer authorized to serve criminal process within the United States, to whom a warrant issued under this section is delivered, shall execute such warrant by taking such parolee and returning him to the custody of the regional commissioner, or to the custody of the Attorney General, if the Commission shall so direct.

18 U.S.C. § 4213 (1985 & Supp.1989). Although section 4213 was repealed effective November 1, 1987, this section remains applicable for five years to individuals who committed offenses prior to November 1, 1987. *See* 18 U.S.C. §§ 4201–4218.

**10.** In a federal regulation, promulgated pursuant to 18 U.S.C. § 4203(a), the United States Parole Commission used the term "arrest" when discussing the retaking process. *See* 28 C.F.R. § 2.46 ("On arrest of the parolee the officer executing the warrant shall deliver to him a copy of the Warrant Application listing the charges against the parolee...."). Another regulation, 28 C.F.R. § 2.44 uses the synonym "apprehension" when speaking of the warrant issued in the case of a parole violator.

The "interpretation of a statute by the agency primarily responsible for its administration is[, if consistent with clear congressional intent,] entitled to deference." *Walker v. Luther*, 830 F.2d 1208, 1215 (2d Cir.1987) (citing *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965)); *see INS v. Cardoza-Fonseca*, 480 U.S. 421, 445–50, 107 S.Ct. 1207, 1220–22, 94 L.Ed.2d 434 (1987); *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 2781 n. 9, 81 L.Ed.2d 694 (1984).

**11.** *See Distillator v. Civiletti*, 612 F.2d 194, 195 (5th Cir.1980) (Parole Board's warrant was characterized as a "warrant for plaintiff's *arrest*") (emphasis added); *United States v. Bissonette*, 586 F.2d 73, 75 (8th Cir.1978) (court stated that the "Commission issued a parole violator warrant for the *arrest* of [parolee] pursuant to 18 U.S.C. § 4213(a)(2)") (emphasis added); *Hyser v. Reed*, 318 F.2d 225, 229–32 (D.C.Cir.) (en banc), *cert. denied*, 375 U.S. 957, 84 S.Ct. 446, 11 L.Ed.2d 315 (1963) (court repeatedly characterized separate defendants as having been "*arrested* on a parole violator warrant") (emphasis added).

ence with the lawful efforts of those charged with the high responsibility of removing from society those parolees who abuse the trust placed in them is indeed a grave matter. Under these circumstances, it is reasonable to assume that Congress did not mean to differentiate between a person who commits such an act and one who harbors a fleeing felon.[12]

### Conclusion

We conclude, therefore, that the plain wording of the statute prohibits Mr. Sager's actions. Accordingly, the judgment of the district court is affirmed.

AFFIRMED.

---

**12.** We need not decide definitively whether Mr. Sager's conduct (harboring an escaped convict) would also constitute a violation of 18 U.S.C. § 1072. However, we note that application of that statute to the situation presented here presents some significant literal and conceptual problems. First, a parolee for whom a warrant of retaking has been issued simply would not appear to be an escapee. Also, it must be remembered that a parolee arrested pursuant to a warrant issued under 18 U.S.C. § 4213 is entitled to a hearing before being deprived of the liberty interest inherent in his parole. *See Morrissey v. Brewer,* 408 U.S. at 482–90, 92 S.Ct. at 2600–04. Therefore, the "retaken" parolee is hardly in the same situation as the prisoner who escapes from confinement and who has no right to a determination by the Parole Commission prior to reincarceration.