Roderick CAMPBELL, Plaintiff,

v.

Daryle WILLIAMSON,
et al., Defendants.

No. 91–3281.

United States District Court,
C.D. Illinois,
Springfield Division.

Feb. 10, 1992.

Roderick Campbell, pro se.

## OPINION

RICHARD MILLS, District Judge:

Campbell, a state prisoner, has submitted a complaint under 42 U.S.C. § 1983.

He claims that the Defendants—various law enforcement and correctional officials—violated his constitutional rights by denying him due process.

Plaintiff's petition for leave to proceed without prepayment of costs and fees is denied and the complaint is dismissed.

## STANDARD

It is well established that *pro se* complaints are to be liberally construed. *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), *reh'g denied*, 405 U.S. 948, 92 S.Ct. 963, 30 L.Ed.2d 819 (1972). "[A] district court judge should deny leave to proceed *in forma pauperis* if an action is frivolous or malicious." *Wartman v. Branch 7, Civil Division, County Court, Milwaukee County, State of Wisconsin*, 510 F.2d 130, 134 (7th Cir.1975), *principle reaffirmed* in *Bryan v. Johnson*, 821 F.2d 455, 458 (7th Cir.1987). A frivolous complaint is one in which "the petitioner can make no rational argument in law or facts to support his or her claim for relief." *Williams v. Faulkner*, 837 F.2d 304, 306 (7th Cir.1988), *aff'd sub nom. Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Because the Plaintiff has indicated that he is indigent, the Court will review the Plaintiff's claims to determine whether they state a colorable cause of action under 42 U.S.C. § 1983.

## FACTS

The Plaintiff alleges the following facts: In or around March 1989, Campbell was discharged from prison and delivered to the Will County Sheriff's Department to face criminal charges, evidently pursuant to a writ or detainer of some kind. He posted bond and was mistakenly released from custody rather than returned to prison. He returned to his home in Springfield, where he resided for approximately nineteen months.

On or about October 19, 1990, the Plaintiff was informed that the Springfield police were looking for him. He telephoned the police station, and an unknown officer informed the Plaintiff that he was not aware of a warrant for the Plaintiff's arrest. He told the Plaintiff he was sending a police officer allegedly just "to talk to" the Plaintiff; however, two squad cars arrived at the scene shortly thereafter and handcuffed the Plaintiff.

The officers, Defendants Swetland, Dowis and Kincaid, did not announce they were arresting the Plaintiff, did not read him his rights, and admitted that they neither had a warrant for the Plaintiff's arrest nor knew of any charges against him. They told the Plaintiff he would find out what the problem was when they reached the police station. Although the Plaintiff then decided that he did not want to go to the police station, he felt forced to accompany the officers.

The Plaintiff was taken before Defendant Russ Pankey, an investigator with the Illinois State Police Fugitive Division. Pankey informed the Plaintiff that the Illi-

nois Department of Corrections had erroneously released him from prison earlier than he should have been paroled. Over his objections, the Plaintiff was transported to the Sangamon County Jail to await the arrival of officers from the Illinois Department of Corrections.

Later that day, an unknown sheriff released the Plaintiff to the custody of two unknown I.D.O.C. correctional officers. The Plaintiff was transported to the Menard Correctional Center, although there was no warrant or court order authorizing the Plaintiff's detention. Defendant Welborn, the warden of the Menard Correctional Center, received the Plaintiff into custody without mittimus papers or any other appropriate documentation.

On or about October 23, 1990, the Plaintiff received a copy of his sentence calculation worksheet. The Plaintiff was not credited for the time he had spent out on bond. The Plaintiff later talked to his counselor, who promised that the time the Plaintiff had spent "on the street" would be credited toward his release date because the Plaintiff was not at fault for the mistaken early release. On December 12, 1990, the Plaintiff was transferred to the medium security unit at the Logan Correctional Center pursuant to administrative authorization.

On January 11, 1991, Defendant Caraway, a Menard correctional officer, issued the Plaintiff a disciplinary report charging him with escape. The report, prepared after an internal investigation, accused the Plaintiff of accepting release from the Will County Jail, "knowing that he still had time remaining to serve with the D.O.C." The Plaintiff appeared before the Adjustment Committee, where his requests for witnesses and for a continuance were denied. The Adjustment Committee found the Plaintiff guilty of escape and imposed the maximum sentence; however, later that day, Defendant Smith, a committee member, informed the Plaintiff that the committee had reversed its decision and recommended further investigation. The Plaintiff signed a document which he thought authorized a continuance, but which actually turned out to be a "disciplinary" transfer form.

The next day, the Plaintiff was transferred to the Pontiac Correctional Center, a maximum security prison. Defendants Bosses, McGinnis and Jockisch approved the transfer. There the Plaintiff received a "Notification of Escape Memo" prepared by Defendant Caraway.

The Plaintiff grieved the "disciplinary" transfer, the untimely disciplinary report, his security classification, and the calculation of his release date. The Institutional Inquiry Board and the Administrative Review Board confirmed the release date, the Plaintiff's security classification as a "high escape risk," and the transfer; the disciplinary report has apparently been expunged.

## ANALYSIS

Even accepting the facts alleged in the complaint as true, and even viewing the facts in the light most favorable to the Plaintiff, the Court finds no cause of action under 42 U.S.C. § 1983. Because the State had legal custody of the already-convicted Plaintiff, he was not entitled to any procedural due process before he was returned to prison. The Court also finds neither the Plaintiff's transfer, nor his unresolved disciplinary report, nor his designation as a high escape risk to be matters implicating the Constitution.

### A.

 The Court finds no constitutional violation stemming from the Plaintiff's so-called "false arrest." The Court first questions whether the Plaintiff was "arrested" or simply "retaken." Many cases have discussed the "retaking" of parole violators; the courts have consistently held that such detentions do not amount to an "arrest" for Fourth Amendment purposes. *See discussion in United States v. Polito,* 583 F.2d 48 (2nd Cir.1978). Parolees have a liberty interest triggering limited protections before they may be "retaken." *See, e.g., U.S. v. Sager,* 881 F.2d 364, 366–67 (7th Cir.1989) (dicta); *Morrissey v. Brewer,* 408 U.S. 471, 482, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972).

The Plaintiff in the case at bar, however, was not entitled to the same protections due a parolee. The Plaintiff had been mistakenly released rather than granted parole. Although the Department of Corrections did not have physical custody of the Plaintiff, the D.O.C. nevertheless had legal custody due to the Plaintiff's unfinished sentence. The Court finds no cognizable liberty interest in remaining free. The local law enforcement officers had probable cause to believe that the Plaintiff was the person being sought by the Department of Corrections; consequently, the officers properly detained him for the time necessary to contact state officials and effect the Plaintiff's transfer back to state custody so that a warrant could be properly executed. *See Polito, supra.* The Court finds no cognizable constitutional violation in the Plaintiff's detention and return to state custody. ·

### B.

■ The Plaintiff's sentence computation claim is also without colorable merit. As discussed in another court's order regarding these facts,[1] the Plaintiff must (a) exhaust state remedies, and then (b) bring a habeas corpus action if he seeks an immediate or more speedy release date. Although the Court notes that the Plaintiff's sentence computation was confirmed at several levels of review, a civil rights action is not the proper vehicle for determination of the Plaintiff's proper release date.

Although the Court has found no Seventh Circuit case law controlling the facts of this case, the Plaintiff's attention is also directed to *Sterling v. Maggio,* 505 F.Supp. 1111 (M.D.La.1981), a case where a similar fact pattern was presented. In that [habeas] case, the petitioner had been convicted of burglary and sentenced to three years imprisonment; he was subsequently convicted of attempted armed robbery and sentenced to fourteen years. The second sentence was ordered to run consecutively with the three-year sentence. Prison officials mistakenly released the petitioner at the expiration of his first sentence, apparently because they did not have the commitment papers for the second conviction. Over a year later, the plaintiff was apprehended and returned to the prison to serve the remainder of his sentence.

The trial court in *Sterling* decided the case under a due process rationale:

> "[I]t is not sufficient to prove official conduct that merely evidences a lack of eager pursuit or even arguable lack of interest. Rather the waiving state's action must be so affirmatively wrong or its inaction so grossly negligent that it would be equivocally inconsistent with 'fundamental principles of liberty and justice' to require a legal sentence to be served in the aftermath of such action or inaction."

*Sterling,* 505 F.Supp. at 1112. After reviewing the facts, the court, noting that eighteen months was not an extended period of time, found that the state had not demonstrated such a lack of interest that it would have been inequitable to require Sterling to serve out his sentence. The court further found that the petitioner was entitled to credit only for the time he spent in jail in California (where he was "rearrested" and held prior to transfer back to Louisiana), but not entitled to credit for the period of time he was not in custody. The Court finds no reason for a different holding under the circumstances of the case at bar.

### C.

■ The Plaintiff's challenge of the disciplinary report charging him with escape also fails to state a viable claim. According to the ARB decision attached as an exhibit to the complaint, the disciplinary report was never acted upon after an investigation was ordered, and the Panel dictated that the disciplinary report be expunged. Even assuming that prison officials failed to remove the report from the Plaintiff's

---

**1.** The plaintiff brought a nearly identical action in the Southern District of Illinois. The plaintiff was denied leave to proceed *in forma pauperis* and the complaint was dismissed on January 15, 1991 (W. Beatty, District Judge). A copy of that order is attached to the instant complaint.

file as directed, the presence of an unadjudicated disciplinary report in the Plaintiff's file does not implicate the Fourteenth Amendment. *Gomes v. Fair*, 738 F.2d 517, 529 n. 10 (1st Cir.1984). By the same token, alleged violations which may have occurred during the disciplinary proceedings do not state a cause of action since the Adjustment Committee reversed itself.

■ Regardless of the disposition of the escape charge, the ensuing change in the Plaintiff's security classification did not violate his due process rights. The decision, based on prison official's belief that the Plaintiff was at least partially blameworthy for his unauthorized sabbatical from prison, does not appear to have been arbitrary or capricious, nor was the decision punitive. Furthermore, as noted by the official who rejected the Plaintiff's grievance, the Plaintiff may petition for review of his high escape risk status every six months. The Illinois Department of Corrections rules governing inmate security classification are completely discretionary; there are no substantive restrictions. *See* Ill.Admin.Code Tit. 20, § 503.20 (1987). Consequently, no liberty interest attaches to an inmate's security classification. *See Kincaid v. Duckworth*, 689 F.2d 702, 704–05 (7th Cir.1982) (ruling on Indiana's similar provisions regarding prison security classification). The Plaintiff's claim concerning his escape risk classification does not state a cause of action under 42 U.S.C. § 1983.

### D.

■ The Plaintiff had no liberty interest in remaining at the Logan Correctional Center. An inmate may be transferred for any constitutionally permissible reason or for no reason at all. *Meachum v. Fano*, 427 U.S. 215, 225, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976); *Matthews v. Fairman*, 779 F.2d 409 (7th Cir.1985). Prisoners are not entitled to a hearing or other procedural due process with respect to transfer decisions. *Shango v. Jurich*, 681 F.2d 1091, 1098 (7th Cir.1982). Furthermore, a transfer to a prison where the conditions of confinement are substantially less favorable does not state a constitutional claim. *Meachum*, 427 U.S. at 225, 96 S.Ct. at 2538. The fact that the Plaintiff had previously been approved for housing at a medium security facility did not create any protected interest in remaining at Logan.

### E.

■ The Plaintiff has also failed to set forth a chronology of events from which retaliatory animus on the part of the Defendants could arguably be inferred. *See Murphy v. Lane*, 833 F.2d 106, 108–09 (7th Cir.1987). Nothing in the record suggests that the Plaintiff was transferred due to his attempts to be released from prison. To the contrary, the Plaintiff was deemed a high escape risk because he failed to return to prison after being released by Will County. Moreover, the Plaintiff's *ipse dixit* statements that there was some vague conspiracy against him is wholly unsupported. "Mere conjecture that there has been a conspiracy is not enough to state a claim." *Tarkowski v. Robert Bartlett Realty Co.*, 644 F.2d 1204, 1206–07 (7th Cir.1980). *Id.*

### CONCLUSION

*Ergo*, even accepting the facts alleged in the complaint as true, the Plaintiff has failed to make a "rational argument" for relief under 42 U.S.C. § 1983. As, more or less, an escapee from prison, the Plaintiff had no protected interest in remaining free. Likewise, the Court finds no constitutional violation in the Plaintiff's transfer, in his designation as a high escape risk, nor in the unresolved disciplinary ticket. Finally, the Plaintiff must file a petition for a writ of habeas corpus if he wishes to challenge his confinement.

The Plaintiff's petition for leave to proceed *in forma pauperis* is DENIED.

The complaint is DISMISSED.

This case is TERMINATED.