OPINION
John P. Costilla appeals the October 11, 2000 order of the Defiance County Court of Common Pleas.[1]
On September 4, 1997, Mr. Costilla pled guilty to grand theft and was sentenced to four years of community control sanctions by the Defiance County Court of Common Pleas. On September 24, 1999, the court found that Mr. Costilla had violated the terms of his community control sanction and sentenced him to a term of three years incarceration with the Ohio Department of Rehabilitation and Correction. Including credit given for periods of incarceration he had previously served, Mr. Costilla's expected release date was August 21, 2002.
However, due to a clerical error Mr. Costilla was released from custody on May 4, 2000, after having served less than one year of his three-year sentence. At the time of his release, the Warden of the Lima Correctional Institute issued Mr. Costilla a certificate entitled "Expiration of Sentence" that affirmed Mr. Costilla had been released and fully restored to his rights. Shortly thereafter, Mr. Costilla returned to Defiance County, where he resided with his mother and stepfather.
On August 16, 2000, it came the attention of the Ohio Department of Rehabilitation and Correction that Mr. Costilla had been mistakenly released. On August 22, 2000, pursuant to an order from the Warden of the Lima Correctional Institution, officers from the Defiance County Sheriff's Department arrested Mr. Costilla at his place of employment and returned him to the custody of the ODRC.
On September 8, 2000, Mr. Costilla filed a petition for a Writ of Habeas Corpus in the Allen County Court of Common Pleas, arguing that his arrest and reincarceration violated his rights under the Fourth, Fifth
and Fourteenth Amendments to the United States Constitution and ArticleI, Section 10 of the Ohio Constitution. On September 26, 2000, the Allen County Common Pleas Court held that Mr. Costilla's release and the certificate of release created a liberty interest cognizable under the Ohio and United States Constitutions, and that his return to prison without a judicial order, warrant or hearing violated his due process rights. See Costilla v. Leonard, Warden (September 26, 2000), Allen County Common Pleas No. CV 2000 0656, unreported at *2-3. Accordingly, the Allen County court ordered Mr. Costilla conditionally released, and held that "[i]f a due process hearing is not held in Defiance County within 14 days, the Writ of Habeas Corpus shall automatically issue."Id. at *4.
On September 27, 2000, the State of Ohio filed a motion in the Common Pleas Court of Defiance County to set the matter for an expedited hearing. The Defiance County court heard the matter on September 29, 2000, and held that no specific procedures were necessary to apprehend and reincarcerate Mr. Costilla:
 I don't think that he had any liberty interest. I don't think there is any due process required other than that which he already received after his conviction and multiple sentencing trips. The warden doesn't have any authority to let him go. * * * * If anybody is aggrieved here, it is the people of the State of Ohio for having a criminal in their midst who ought to be behind bars[,] as opposed to [Mr. Costilla], who has no expectation of being at liberty until such time as he has served the entire sentence imposed by the Court. * * * * I frankly don't know why [the Allen County Common Pleas Court] issued that order. I, I can see from the recitation of facts, that [the Allen County court] was disturbed in the manner in which [Mr. Costilla] was picked up. That is neither here nor there. I mean, he is a convicted criminal under a valid sentence. The fact that the functionaries of the Department of Corrections apparently can't add may give rise to some other kind of action, thought [as] I said, I don't know how he would be aggrieved. I mean, he actually got a vacation from his stay in prison by the screw up of the Department of Corrections.
 Transcript of Hearing, at *9-11. In accordance with the foregoing reasoning, the Defiance Court remanded Mr. Costilla to the custody of the Department of Rehabilitation and Correction. Mr. Costilla now appeals, and asserts a single assignment of error with the trial court's judgment.
 It was a violation of Mr. Costilla's procedural and substantive due process rights to have been seized in the manner he was.
 At the outset, we believe it is appropriate to distinguish this case from the situation addressed in State v. Garretson (June 30, 2000), Brown App. No. 99-10-123, unreported, 2000 WL 924694, appeal allowed by State v. Garretson (2000), 90 Ohio St.3d 1451
(Table, No. 00-1462). The Garretson case originated in the Twelfth District Court of Appeals, but was decided by a panel of this court sitting by assignment. In that case, the defendant was released by the Department of Rehabilitation and Correction, but the Brown County Prosecutor alleged he had been mistakenly released prior to the expiration of his sentence and filed a "Motion for an Order to Return Defendant to Prison." However, the Prosecutor did not endeavor to make the Department of Rehabilitation and Correction a party to the proceedings, and the ODRC itself did not intervene in the case. After a hearing, the Brown County Court of Common Pleas agreed that Mr. Garretson had been mistakenly released, and ordered him into custody to serve further prison time.We reversed the trial court's decision, observing that "[o]nce [a] trial court has carried into execution a valid sentence * * * it may no longer amend or modify that sentence." Id. At *3, citing State v. Addison (1987), 40 Ohio App.3d 7. We held that because the initial sentence imposed upon the defendant was valid, "after [his] confinement to prison the trial court was without continuing jurisdiction to alter the sentence or take further action upon it * * * [because] jurisdiction [over the execution of the sentence] was transferred to the penal institution of the executive branch." Garretson, unreported at *4.
It should be apparent that the Garretson case turned upon a jurisdictional issue not present here, because Mr. Costilla was not returned to prison by a court's modification, reinterpretation or reimposition of his initial sentence. Rather, the entity that returned him to prison was the very entity that we noted in Garretson properly had jurisdiction over execution of a sentence the Department of Rehabilitation and Corrections. Accordingly, the only issues to be decided in this case are whether Mr. Costilla's arrest and reincarceration violated his procedural or substantive due process rights under the United States or Ohio Constitutions. We will address each aspect of Mr. Costilla's due process claim separately.
The relevant inquiry regarding procedural due process is whether Mr. Costilla's release from prison conferred upon him a liberty interest that was interfered with or deprived by the State, and if so, whether the "procedures attendant upon that deprivation were Constitutionally sufficient" under the United States and Ohio Constitutions. KentuckyDepartment of Corrections v. Thompson (1989), 490 U.S. 454, 460. The analysis is a two-step process, and a court need not examine the procedures utilized by the State unless it first finds that the claimant had "a legitimate claim of entitlement to [the liberty interest]." Id., quoted in Henderson v. Simms (4th Cir. 2000), 223 F.3d 267, 274.
In Morrissey v. Brewer (1972), 408 U.S. 471, 482, the United States Supreme Court examined whether parolees were entitled to the protections of procedural due process prior to a revocation of parole and a return to incarceration. The Court held that prisoners on parole had a cognizable interest in continued liberty, and observed:
 The liberty of a parolee enables him to do a wide range of things open to persons who have never been convicted of any crime. * * * * He may have been on parole for a number of years and may be living a relatively normal life at the time he is faced with revocation. The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions. In many cases, the parolee faces lengthy incarceration if his parole is revoked.
 We see, therefore, that the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a "grievous loss" on the parolee and often on others. * * * [T]he liberty is valuable and must be seen as within the protection of the Fourteenth Amendment. Its termination calls for some orderly process, however informal.
 Mr. Costilla contends that his interest in liberty is similar, and that he wrongfully denied "some orderly process" attendant to its termination. The Allen and Defiance County Courts of Common Pleas differed over the resolution of this question, based on their initial disagreement as to whether Mr. Costilla had a protected liberty interest in his continued freedom. Mr. Costilla contends that the Allen County Court of Common Pleas correctly recognized that when combined with his actual release, the certificate of expiration of sentence was an "express promise that his previous rights would be restored," and that if the State planned to break that promise it was required to do so in a way that protected his rights. In response, the State argues that the Defiance County court correctly held that mistakenly released prisoners have no legitimate expectation of continued freedom and thus cannot have a protected liberty interest.
Upon review of the relevant law in the area, we are persuaded that Mr. Costilla had "no expectation of being at liberty until such time as he has served the entire sentence imposed," and thus had no legitimate claim of entitlement to continued freedom. See Henderson, 223 F.3d at 274;Hawkins v. Freeman (4th Cir. 1999), 195 F.3d 732, 743 (noting that once it is discovered that a prisoner has been mistakenly released that the practice "seemingly invariable, * * * has been to incarcerate, rejecting any claim of entitlement to freedom."). See also Campbell v. Williamson
(C.D.Ill. 1992), 783 F. Supp. 1161, 1164 (holding that a mistakenly released prisoner was not entitled to the process protections due to a parolee under Morrissey). We note that no Ohio court has held that a mistakenly released prisoner has a cognizable liberty interest in continued freedom. Cf. Mitchell v. Tate (March 19, 1986) Ross App. No. 1179, unreported, 1986 WL 3407 at *2 (holding that prisoner mistakenly released and summarily returned to prison was not entitled to a writ of habeas corpus). See also State v. Dawley (Sept. 25, 1986), Cuyahoga App. No. 50974, unreported, 1986 WL 10841 at *5 (four-year delay prior to service of sentence did not violate defendant's due process rights; State did not act in bad faith and defendant did not suffer prejudice from the delay). The few courts that have recognized a liberty interest similar to that claimed by Mr. Costilla have done so in cases where the prisoner has served a substantial portion of his sentence and was fully integrated back into society prior to reapprehension. Cf. Johnson v. Williford (9th Cir. 1982), 682 F.2d 868, 873 (fifteen-month delay in reapprehension of erroneously paroled federal prisoner estopped government from execution of remainder of sentence, court concluded that forcing defendant to serve remainder of sentence would not comport with "fundamental principles of liberty and justice").
Here, Mr. Costilla had served less than one year of his definite three-year sentence, and was reapprehended within four months of his mistaken release. Moreover, there is nothing in the record to indicate that Mr. Costilla himself believed his release was anything but a mistake. Finally, we do no believe that the form entitled "Expiration of Sentence" creates a liberty interest in and of itself. The warden was not required by law or rule to issue the certificate, and "the ground for a constitutional claim [that a liberty interest is created], if any, must be found in statutes or other rules defining the obligations" of the State with respect to its prisoners. Connecticut Board of Pardons v.Dumschat (1981), 452 U.S. 458, 466. Moreover, a decision allowing the issuance of the certificate to terminate Mr. Costilla's sentence would permit an executive officer (the warden) to modify a judicially imposed sentence by fiat, in direct violation of the separation of powers inherent in the Ohio Constitution. See State ex rel. Bray v. Russell
(2000), 89 Ohio St.3d 132, 136 (sentencing of prisoners is a judicial, not an executive, function). For all these reasons, we must conclude that the Defiance Court of Common Pleas correctly held that Mr. Costilla did not have a recognized liberty interest in his continued freedom, and that he was therefore due no specific process upon his reapprehension.
Regarding Mr.Costilla's substantive due process claim, the relevant inquiry begins by determining whether the circumstances of his reapprehension were "so egregious, so outrageous, that [they] may be fairly said to shock the contemporary conscience." County of Sacramentov. Lewis (1998), 523 U.S. ___, 118 St. 1708, 1717 n. 8, quoted in Hawkinsv. Freeman (4th. Cir. 1999), 195 F.3d 732, 738. If that threshold question is answered in the affirmative, the court must determine based upon history and precedent the nature of the right asserted and therefore the level of scrutiny to be assigned to the action. Id., discussed inHawkins, 195 F.3d at 738-39 n. 1. In this case, it appears that the Allen County Common Pleas Court was disturbed by the fact that Mr. Costilla was apprehended without a warrant or other written charge and immediately returned to prison. The court observed that Mr. Costilla "was just snatched and summarily returned to LCI after being released and living peaceably in society." Although its entry is unclear on the point, the Allen county court presumably determined that this action "shocks the contemporary conscience."
We must disagree. The Defiance County Court of Common Pleas correctly held that because defendant was "a convicted criminal under a valid sentence" that his reapprehension without a warrant or a hearing caused him no prejudice. Until Mr. Costilla served the balance of his actual sentence, he remained under the jurisdiction of the Department of Rehabilitation and Correction. See Mitchell v. Tate (March 19, 1996), Ross App. No. 1179, unreported, 1986 WL 3407 at *2 (jurisdiction over prisoner did not end until sentence had been served). Cf. State v.Garretson (June 30, 2000), Brown App. No. 99-10-123, unreported, 2000 WL 924694 at *4; State ex rel. Bray v. Russell (2000), 89 Ohio St.3d 132,135. Because Mr. Costilla was properly under the authority of the executive branch, we do not believe that the mere fact that he was apprehended without a warrant that his arrest "shocks the conscience." See Hawkins,195 F.3d at 744-45 (noting that "the apparently routine executive practice when such an error has been to incarcerate or reincarcerate" and holding that rearrest and reincarceration of mistakenly released prisoner did not "shock the contemporary conscience"). Accordingly, we cannot say that Mr. Costilla's substantive due process rights were violated. Id.
For these reasons, appellant's sole assignment of error is overruled, and the judgment of the Defiance County Court of Common Pleas is affirmed.
 _________________ SHAW, J.
 BRYANT and HADLEY, JJ., concur.
[1] This case was originally assigned to the accelerated calendar. However, pursuant to Loc.R. 12(5) we elect to render our decision in a full opinion.